[Nelson v. Hubbard; Adams Cotton Mills v. Dimmick.]

# Nelson *v.* Hubbard.

# Adams Cotton Mills *v.* Dimmick.

*Petition for Dissolution of Corporation; Bill in Equity to Foreclose Mortgage by Corporation.*

1. *Suit against dissolved corporation.*— A suit can not be maintained against a dissolved corporation, unless, by force of some statute, it continues in existence to the extent of remaining liable to suit.

2. *Same; as affected by statutory provisions.*— Section 1690 of the Code, providing that "all corporations whose powers expire by limitation, all which are dissolved by forfeiture or any other cause, exist as bodies corporate for the term of five years after such dissolution, for the purpose of prosecuting or defending suits," &c.—does not authorize suits against corporations which have been dissolved at the instance of stockholders, pursuant to the provisions of the Code, § 1683 *et seq.;* the statute in such case (Code, § 1688) providing for the payment of the debts of the corporation by the receiver, and requiring, in the case of any contested claim, that the claimant file the same in the dissolution proceeding, and that the genuineness thereof be ascertained as in other contested claims in chancery.

3. *Statutory remedy in favor of creditor of dissolved corporation.*—The statute (Code, §§ 1683-1689) providing for the voluntary dissolution of private corporations, and for the administration of their assets for the benefit of their creditors and stockholders, does not impair the obligation of contracts entered into by such corporations while the statute was in force; and creditors of corporations which have been dissolved pursuant to the provisions of the statute can enforce their demands against the dissolved corporations only in the mode prescribed by the statute.

4. *Power of corporation to pledge its bonds secured by mortgage on property.*—The right of a private corporation "to borrow money, and to mortgage, or otherwise convey or pledge, its property, real or personal, and its franchises, to secure the payment of the money so borrowed, or any other debt contracted by it" (Code, §§ 1562, 1664), includes the power to pledge the bonds of the corporation, secured by its mortgage on property, as collateral security for debts of the corporation presently created or already owing.

5. *Same; as affected by constitutional provisions.*—A pledge by a private corporation of its bonds, secured by mortgage on property, if made without fraud and solely for the *bona fide* purpose of satisfactorily securing the payment of a debt owing by the corporation, is not a violation of the constitutional provision that "no corporation shall issue stock or bonds except for money, labor done, or money or property actually received, and all fictitious increase of stock or indebtedness shall be void" (Const. of Ala. Art. 14, § 6); though the face value of the bonds pledged exceeds the amount of the indebtedness to be secured.

6. *Notice of meeting to authorize execution of mortgage by private corporation; allegations as to, in bill to foreclose.*—A bill in equity alleging

[Nelson v. Hubbard; Adams Cotton Mills v. Dimmick.]

the execution of a mortgage by a corporation, and seeking its fore-
closure, need not allege the publication, pursuant to the statute (Code,
§§ 1562, 1664), for four consecutive weeks, of notice of the meeting of
the stockholders called for the purpose of authorizing the execution
of the mortgage; the execution of the mortgage presupposing the
giving of the notice as directed by the statute, and the omission of
such prerequisite being matter of defense,

7. *Same; waiver of stockholders of constitutional and statutory require-
ments.*—The provision of the Constitution (Const. Ala. Art. 14, § 6) that
"the stock and bonded indebtedness of corporations shall not be in-
creased, except in pursuance of general laws, nor without the consent
of the persons holding the larger amount in value of stock, first ob-
tained at a meeting to be held after thirty days' notice is given in
pursuance of law," and the statutory regulations in reference to the
giving of such notice (Code, §§ 1562, 1572, 1664, 1667), are requirements
for the benefit of stockholders, and compliance therewith may be
waived by them; and the issue and pledge of the bonds of a private
corporation, authorized at a meeting of stockholders of which notice
was not given in the manner prescribed by the statute, are binding
upon the corporation, when all the stockholders, with full knowledge
of the facts, formally ratify such issue and pledge.

8. *Execution, after dissolution of corporation, of powers of trustees un-
der deed of trust of corporation.*—When a mortgage or deed of trust,
executed by a private corporation to secure the payment of bonds
issued by it, authorizes the trustees, upon default in the payment of
the principal or interest on the bonds secured, to take possession of
the mortgaged property, and to borrow money necessary to preserve,
protect and operate it, making the amount so borrowed a charge upon
the proceeds of a sale of the property, these powers may be exercised
by the trustees under the orders of the court, after the dissolution of
the corporation at the instance of its stockholders, under Code, §§
1683 *et seq.*

9. *Alteration of terms of mortgage executed by corporation to secure issue
of bonds.*—No alteration of the terms fixing the conditions consti-
tuting a default which will authorize a foreclosure of a deed of trust
or mortgage executed by a corporation to secure an issue of its bonds
can be made without the consent of all the holders of the bonds se-
cured by the mortgage or deed of trust.

From the City Court of Montgomery.

Heard before the Hon. J. M. CHILTON, Special Judge.

These two cases were argued and submitted together. The
opinion states the nature of the cases and the proceedings
in them. The bill, and the exhibits thereto, filed by the
trustees under the mortgage or deed of trust executed by
Adams Cotton Mills show that that instrument was given to
secure the payment of one hundred and forty bonds for the
sum of $500.00 each; that "all of said bonds have been
negotiated or disposed of in some manner," and are out-
standing; that eighty of the bonds were pledged to the First
National Bank of Montgomery to secure a debt of twenty-
five thousand dollars owing by Adams Cotton Mills to the
bank. The bill further alleges the adoption by the board of
directors of said Adams Cotton Mills of a resolution pur-

porting to change the terms of the mortgage or deed of trust in reference to the default which would authorize the trustees to foreclose, said resolution providing "that should this company fail to pay the obligations, notes, or bills of exchange, executed by it to the said First National Bank of Montgomery, Alabama, at the maturity of the same, then. the said bank is hereby empowered and authorized to call upon the trustees mentioned in said deed of trust to foreclose the said mortgage, and the said trustees are hereby authorized and empowered, upon such demand, to take immediate steps to foreclose such mortgage, either under the power of sale contained therein or by proceedings in equity, as they may be advised, notwithstanding any stipulation in the said bonds, or in the said mortgage or deed of trust to secure the same, to the contrary. It being the true intention of this resolution to modify a stipulation contained in the said bonds and mortgage deed of trust, so as to authorize and empower the foreclosure of the said mortgage deed of trust, in event default shall be made in the payment of the indebtedness to the said First National Bank of Montgomery, hereinbefore referred to." The bill alleged that said Adams Cotton Mills failed to pay the said indebtedness due to said bank and, thereupon, the said bank, by its regularly constituted authorities, demanded in writing that the trustees should foreclose said deed of trust, as provided for by the said resolution. The court having overruled the motion, made by some of the defendants, to dismiss said bill as an independent bill of complaint, and that the bill be treated as a claim filed in the dissolution proceeding, a demurrer was interposed in the name of Adams Cotton Mills, raising the questions considered in the opinion as to the execution of the mortgage or deed of trust, and the issue and pledge of the bonds, and also the objection, as stated in the seventeenth ground of demurrer, that "it is not alleged that the board of directors had any authority to pass the resolutions alleged to have been passed by them in reference to said bonds deposited with said First National Bank." This seventeenth ground of demurrer alone was sustained. The petitioners in the dissolution proceeding, the Adams Cotton Mills, and the complainants in the bill to foreclose the mortgage or deed of trust, respectively, appeal, each of them assigning as errors the rulings adverse to them respectively.

WATTS & SON, for Nelson, et als., and Adams Cotton Mills, cited Opelika v. Daneil, 59 Ala. 211; Peeplees v. Stolla, 57 Ala. 53; Shultman v. Fitzpatrick, 62 Ala. 571; Hatcher v. Diggs,
Vol. 96.

[Nelson v. Hubbard; Adams Cotton Mills v. Dimmick.]

76 Ala. 189; *Butler v. Gazzam*, 81 Ala. 491; *Arrington v. Railroad Co.*, 11 So. Rep.; *Head v. Ins. Co.*, 2 Cranch, 127; *Montgomery Iron Works v. Westinghouse*, 79 Ala. 312; *Chewackla Lime Works v. Dismukes*, 87 Ala. 344; Const. Ala., Art. 14, § 6; Code, §§ 1562, 1664; *Fitzpatrick v. Dispatch Co.*, 83 Ala. 604; *Evans v. Williams*, 87 Ala. 725; *Elyton Land Co. v. Birmingham W. & E. Co.*, 92 Ala. 407; *Parsons v. Joseph*, 92 Ala. 402; *Davis v. Joseph*, 10 So. Rep. 830; *McGehee v. Lindsay*, 6 Ala. 16; *Railroad Co. v. Dow*, 120 U. S. 287; *McDonald v. Mobile L. Co.*, 56 Ala. 468; *Flewellen v. Crane*, 58 Ala. 629.

TOMPKINS & TROY, and BRICKELL, SEMPLE & GUNTER, for Dimmick and Goldthwaite, trustees, &c., cited *Ex parte Printup*, 87 Ala. 148; *Lehman v. Tallassee, &c. Co.*, 64 Ala. 567; Jones on Pledges, § 72; 4 Am. & Eng. Ency. of Law, 218; *Wells v. Morrow*, 38 Ala. 125; *Thames v. Rembert*, 63 Ala. 561; *Connerly v. Ins. Co.*, 66 Ala. 432; *Allen v. Bank*, 120 U. S. 34; *Cathcart v. Robinson*, 5 Peters, 280; *Railroad Co. v. Dow*, 120 U. S. 287; *Stein v. Howard*, 65 Cal. 616; *Fogg v. Blair*, 139 U. S. 125; *Handley v. Stutz*, 139 U. S. 417; *First National Bank v. Gustin*, 44 N. W. Rep. 198; *Beecher v. Railroad Co.*, 45 Mich. 603; Jones on Corp. Bonds & Mort. § 294; Beach on Receivers, § 393.

WALKER, J.—Provision is made in this State for the voluntary dissolution of any private corporation, organized under the general law, at the instance of a majority of the stockholders, owning three-fourths of the stock. The existence of the corporation may be terminated though there is no ground for vacating its charter or forfeiting its franchises, whether it is solvent or insolvent, and whether it has been successful or unsuccessful in the business for the prosecution of which it was organized. The law makes it one of the terms of the agreement which binds the stockholders together as a body corporate that the association may be disbanded and the business stopped and wound up whenever a majority of the stockholders, owning three-fourths of the stock, choose to do so, and take the steps prescribed by the statute for the accomplishment of this result. We copy from the Code the sections containing the provisions on this subject: "1683. (2054). *Petition for dissolution.*—Whenever a majority of the stockholders of any private corporation, owning three-fourths of the stock, wish to dissolve the corporation, they may do so in the following manner. They shall file a petition in the Chancery Court of the division in which the cor-

16–96.

poration is located, or has its principal place of business,—, setting forth the names of all the stockholders and their residences, the amount of stock owned by each stockholder, as nearly as practicable all the property, real and personal, of the corporation, and stating that it is the wish of the petitioners to dissolve the corporation. 1684. (2055.) *Notice by register.*—Upon the filing of such petition, the register shall give notice by subpœna to all the stockholders not joining in the petition to appear within thirty days after service and contest the same; and if any stockholder residing out of the State does not join in the petition, he shall be made a party by advertisement in the manner non-resident defendants are made parties, and he has thirty days after the perfecting of such notice to answer and contest the petition. 1685. (2056.) *When dissolution decreed.*—If, at a regular term of the Chancery Court, after the cause is at issue, it be made to appear to the chancellor that a majority of the stockholders wish to dissolve the corporation, proof being made as in chancery cases, the chancellor shall decree the corporation dissolved. 1686. (2057, 2059.) *Receiver appointed; his duties.*—Upon decree of dissolution, the chancellor shall appoint a receiver of all the property and assets of the corporation. The chancellor shall direct the receiver to collect, by suit or otherwise, all the debts due the corporation, and sell property, real or personal, belonging to the corporation, and how he shall make the title thereto to the purchaser; the chancellor may, in his discretion, authorize the receiver to proceed, without suit, to sell any or all of the debts, and assets of the corporation at public sale for cash, or on such terms as in his judgment the interest of the parties may require. 1687. (2058.) *How selected; bond.*—The person nominated by the majority of the stockholders must be appointed receiver, if they can agree; but if they fail to agree for ten days after the decree of dissolution, the chancellor, in term time or vacation, or the register in his absence, must appoint such receiver, requiring proper bond and sureties for the performances of of his duties. 1688. (2060, 2061.)—*Receiver pays debts; contested claims.*—In the performance of his duties under the decree, the receiver shall pay the debts of the corporation in full or ratably, as the funds realized may permit. If any claim is contested, it must be filed by the claimant in the court, and the genuineness thereof ascertained as in other contested claims in chancery. The residue, after the debts and costs are paid, shall be divided among the stockholders according to the amount of stock owned by each.

[Nelson v. Hubbard; Adams Cotton Mills v. Dimmick.]

1689.   (2062.)   *Appeal.*—Any party dissatified with the decree of dissolution may appeal, giving bond and sureties, as prescribed by the chancellor or register."

A majority of the stockholders, owning more than three-fourths of the stock, in the domestic corporation known as Adams Cotton Mills filed their petition on the equity side of the City Court of Montgomery, for the dissolution of that corporation, under the statute above quoted. A single stockholder who did not join in the petition was the only party defendant thereto. The proceeding was conducted in strict conformity with the provisions of the statute, and on the 5th day of January, 1892, a decree was made dissolving the corporation. On the 8th day of January, 1892, W. B. Tanner, who had been nominated by a majority of the stockholders, was appointed receiver; but, it appearing to the court that said Tanner had a lease on the property of the dissolved corporation, it was provided in the decree appointing him receiver that he should not act as receiver or be responsible as such until he should file in the court an instrument in writing surrendering all rights as such lessee, and until he should give bond as provided for in the decree.

On the 13th day of January, 1892, eight days after the date of the decree dissolving the corporation, the trustees in a mortgage or deed of trust alleged to have been made by the corporation on the 1st day of May, 1889, filed their independent original bill of complaint on the equity side of the same court, for the execution of the trusts of that instrument and for its foreclosure. The corporation itself and its stockholders were named as parties defendant to this bill. The petitioners in the dissolution proceeding and the same persons as defendants to the original bill filed by the trustees made a motion in each of those causes to dismiss the bill filed by the trustees as an independent bill of complaint, that said bill of complaint be treated as a claim filed in the dissolution proceeding, and that an order be made that the receiver when appointed in the dissolution proceeding should examine into the claim and contest the same if he should see proper to do so. These motions were overruled, and the trustees were permitted to proceed with their suit as an independent cause. This action is assigned as error. In support of this assignment, it is contended that, after the dissolution of the corporation, claims against it can not be enforced by suit against the corporation, but, if contested, must be filed by the claimant in the dissolution proceeding. A review of the ruling on the motions above

mentioned involves a consideration of the effect of the decree of dissolution, and a determination of the proper mode of enforcing claims against the dissolved corporation.

The dissolution of a corporation implies its utter extinction and obliteration as a body capable of suing or being sued, or in whose favor obligations exist or upon which liabilities are imposed. For all legal purposes the dissolution is the death of the corporation; thereafter, it is a mere non-entity. The effect at common law was that its real estate remaining unsold reverted to the original grantor or his heirs, its personal estate went to the crown, or to the State in this country, and the debts due to and from it were totally extinguished.—*Paschall v. Whitsett*, 11 Ala. 472; *Saltmarsh v. P. & M. Bank*, 14 Ala. 668. Such is the effect at law, where only *legal* rights or titles are recognized. But courts of equity regard a business corporation as holding the legal title to its property in trust for its stockholders and its creditors. Equity treats its property as appropriated and devoted to certain purposes, to which it is to be applied though the existence of the corporation itself is terminated, and legal remedies against it are extinguished. The rights of those who are beneficially interested in the property of the corporation survive and are enforced, though the artificial being in which the legal title is vested passes out of existence. It is plain, upon a consideration of the real nature and object of the corporate association, that its property is held and used in its business for the ultimate profit or advantage, not of the corporation itself, but of those who as stockholders have embarked their means in the enterprise; and that the reliance of those who have demands against it is not upon the responsibility of the mere legal entity in the name of which the business is transacted, but upon the material resources which are pledged for the satisfaction of the liabilities which may be incurred in its name. A court of equity sees to it that the property is applied to the purposes to which it was devoted, though the agency which was specially provided for the execution of the trust has been totally destroyed. The trust is not allowed to fail for the want of a trustee.—*Mumma v. Patomac Co.*, 8 Pet. (U. S.), 281; *Curran v. Arkansas*, 15 How. (U. S.), 311; *Broughton v. Pensacola*, 93 U. S. 266; 2 Morawetz on Private Corporations, §§ 1032, *et seq.;* 4 Am. & Eng. Encyc. of Law, 306. In *Broughton v. Pensacola, supra*, it was said: "The ancient doctrine that, upon the repeal of a private corporation, its debts were extinguished, and its real property reverted to its grantors, and its personal property

[Nelson v. Hubbard ; Adams Cotton Mills v. Dimmick.]

vested in the State, has been so far modified by modern ad-judications, that a court of equity will now lay hold of the property of a dissolved corporation, and administer it for the benefit of its creditors and stockholders. The obligation of the contracts, made whilst the corporation was in exis-tence, survives its dissolution; and the contracts may be enforced by a court of equity, so far to subject, for their sat-isfaction, any property possessed by the corporation at the time. In view of equity, its property constitutes a trust fund pledged to the payment of the debts of creditors and stockholders."

Upon the dissolution of a corporation, unless some statute regulates the succession to its property and prescribes the mode of administering upon its assets and winding up its affairs, recourse must be had, for the protection of the rights of creditors and stockholders, to the ordinary and estab-lished remedies of courts of equity for the enforcement of trusts upon property which is left without a trustee entitled to hold and dispose of it. In such case the defunct corpor-ation itself could no more be proceeded against, than could a dead man in reference to obligations incurred by him in his life-time. Frequently, under statutes on the subject, the dissolution of a corporation is effected in such a way that, after all its powers of carrying on the business for which it was chartered are withdrawn, its life is yet pre-served for a defined period for the purpose of prosecuting and defending suits and settling its affairs. But such pro-longation of the existence of the corporation, after its dis-solution in a mode authorized by law, can not be recognized unless it is specially provided for by legislative enactment. The dissolution of a corporation works an abatement of suits then pending against it, and presents an insuperable imped-iment to the institution of new suits against it, unless some clear statutory provision prevents the termination of its ex-istence, for the purposes of its organization, from having this effect.—*Saltmarsh v. P. & M. Bank*, 17 Ala. 761 ; *National Bank v. Colby*, 21 Wal. 609 ; *Nevitt v. Bank of Fort Gibson*, 6 S. & M. (Miss.), 513 ; *Harvemeyer v. Superior Court*, 18 Amer. St. Rep. 192–211.

There is a provision in our statutes for the prolongation of the corporate existence in certain cases and for certain specified purposes. Section 1690 of the Code, which imme-diately follows the provisions above quoted in reference to the voluntary dissolution of corporations, is in these words : "All corporations whose powers expire by limitation, all which are dissolved by forfeiture or any other cause, exist

as bodies corporate for the term of five years after such dissolution, for the purpose of prosecuting or defending suits, settling their business, disposing of their property, and dividing their capital stock, but not for the purpose of continuing their business." The question now presented is: Does this provision apply in the case of a corporation which has been dissolved at the instance of a majority of its stockholders, under the provisions of the preceding sections, which have already been copied into this opinion?

There is some plausibility in the suggestion that a corporation which has been dissolved by the voluntary action of its stockholders is not within the terms of the section last copied, as its powers did not expire by limitation, and it was not dissolved by forfeiture, and it can not properly be regarded as dissolved for "any other cause," when its dissolution is brought about by the mere wish of a majority of its stockholders expressed in the manner prescribed by the statute. The statute does not, however, seem to require that a corporattion, to come within the class last mentioned, must have been dissolved "for cause." We think that on a fair interpretation of the language of the first part of the section, if not read in connection with what follows, the ‾enumeration is so expressed as to include all corporations which have been dissolved in any manner whatsoever. But in the latter part of the section the purposes to subserve which the existence of the enumerated classes of corporations is extended are clearly expressed. They are kept alive solely "for the purpose of prosecuting or defending suits, settling their business, disposing of their property, and dividing their capital stock." Could this provision have been intended to apply to the case of a corporation which has been dissolved under a law which clearly provides for the accomplishment of all the purposes mentioned by an agency other than the corporation itself? That is the case of a corporation which is dissolved at the instance of a majority of its stockholders, pursuant to the provisions of the preceding sections of the same chapter of the Code. To the receiver, who must be appointed in such case when the dissolution is decreed, are entrusted the duties and powers of prosecuting suits or claims in favor of the corporation, of collecting claims against it, of settling its business, of disposing of its property, and of dividing its capital stock.—Code, §§ 1686–1688, copied above. The provisions for the accomplishment of all these purposes by the receiver, acting under the orders of the court in the dissolution proceeding, involve the withdrawal from the corpora-

tion itself of the right to do the same thing. The performance by the corporation, after the decree of dissolution, of the functions mentioned in section 1690, can not be reconciled with the exercise by a receiver appointed under the preceding sections of the powers plainly conferred upon him. . The several sections are, if possible, to be so construed as not to conflict in their provisions. There is a field for the operation of section 1690 in all cases where the law does not specially provide for the termination of the right of a corporation to continue business under its charter having the effect of devolving upon some other agency the power and duty of prosecuting and defending claims in favor of and against it, and of winding up its affairs in other respects. But that general provision does not apply when all the purposes of its enactment, as expressed upon its face, are specially provided for otherwise. The conclusion is, that a corporation which has been dissolved under the preceding sections no longer exists for the purposes mentioned in the latter section. It can no longer sue or be sued, as its powers in this regard have been surrendered, and must be conferred upon another.

The statute under which the corporation in question, Adams Cotton Mills, was dissolved, supplies a complete scheme, or system of procedure, for the winding up of its affairs. This statute does not purport to undo the valid acts of the corporation while it was in existence, to disturb its previous dispositions of property, or to impair the obligation of contracts into which it had entered. On the contrary, it specially provides for the devolution of its property, and charges the trustee, to whom the administration of its assets, under the orders of the court, is confided, with the duty of applying them to the purposes to which, according to rules already recognized in couts of equity, the assets of dissolved corporations should be applied. A statute providing for the voluntary dissolution of corporations, and for the administration of their assets for the benefit of their creditors and stockholders, can not be regarded as impairing the obligations of their contracts. This is obviously true as to contracts which were made while such statute was in force. Persons dealing with the corporation are to be regarded as doing so in contemplation of the possibility that the corporation may at any time be dissolved in the mode authorized by the statute. The statute provides for such a contingency as fully as if it had been specified in the contract itself as one of its conditions. In such case, one to whom the corporation is bound by contract has no more right to complain

of its dissolution in the mode prescribed by the statute than he would have to complain of the death of a natural person who was his debtor. And, when he desires to enforce his demands by suit, he is as much bound to take notice of the dissolution of the corporation and to proceed in the mode prescribed by the statute to subject its assets to the satisfaction of his claim, as he would be to take notice of the death of his individual debtor and to proceed against his estate in the manner the law directs. The prolongation of the existence of the corporation, after its right to continue its regular business is terminated, with only such powers as are necessary to enable it to wind up its own affairs; the imposition upon the persons who were the managers of the corporation at the time of its dissolution of the power and duty of collecting its assets and settling up its business; and the appointment of a receiver, who must, under the orders of the court, administer upon the estate of the defunct institution—are merely different methods of doing the same thing. Whether a statute adopts one or another of such methods, it merely recognizes the rights of creditors and stockholders, of which, prior to such statute, only courts of equity took cognizance, and provides a new remedy for their enforcement in a manner perhaps more efficacious than was possible under the ordinary rules of chancery procedure. Such statutes do not impair the obligation of contracts, or disturb vested rights; and the remedy which the statue prescribes for a particular class of cases must be pursued in such cases, as the statutory remedy must be considered as superseding and substituted for all others directed to the same end.— *Von Glahn v. De Rosset,* 81 N. C. 467; *Mobile & Ohio Railroad Co. v. State,* 29 Ala. 573; *People v. O'Brien,* 111 N. Y. 1; 7 Am. St. Rep. 684, and note; *Thompson v. Marginal Freight Railway,* 123 Mass. 32; *Foster v. Essex Bank,* 16 Mass. 245; 2 Morawetz on Corps. § 1036, *et seq.*; 4 Amer. & Eng. Encyc. of Law, 307.

What has been said above leads to the conclusion that the bill filed by the trustees in the mortgage or deed of trust could not be maintained against the corporation itself after its dissolution. The claim thereby set up could be asserted and enforced only in the dissolution proceeding. It is not denied that the powers conferred upon the trustees by the instrument could be exercised by them after the dissolution of the corporation, if like powers granted by an individual could have been exercised by his donees after his death. But judicial proceedings against the estate of the dissolved corporation must follow the course prescribed by

the statute for such cases. The court should have treated the bill as a claim filed in the dissolution proceeding, as it must be so treated to be regarded as properly presenting the claim sought to be enforced. The failure of the person nominated by the majority of the stockholders to accept the appointment and to qualify as receiver did not lessen the effect of the decree of dissolution in terminating the existence of the corporatian. The affairs of the defunct corporation remained to be administered under the orders of the court in the dissolution proceeding. One person having declined to accept the trust, it was the duty of the court to appoint some one else receiver.

Though the questions as to the validity of the mortgage or deed of trust and of the right of the trustees therein named, on the facts alleged by them, to demand a foreclosure of that instrument, are raised in the name of a corporation which has been dissolved; yet, as those questions must be determined in the contest between the parties who are before the court, they will be briefly considered.

It is alleged that the issue of the bonds and mortgage was authorized by a resolution adopted "at a meeting of the stockholders of said company, held for that purpose, at its office and principal place of business at its mills, after thirty days notice of the time, place and purpose of the meeting given to each stockholder personally and by publication for thirty days in the Montgomery Advertiser, a newspaper published in said city of Montgomery." The publication of the thirty days notice prescribed by the statute must be "for four consecutive weeks in the newspaper published nearest to the place of business of the corporation."—Code, §§ 1562 and 1664. A publication for thirty days may be by insertions of the notice in the newspaper "for four consecutive weeks." The allegation above quoted does not show in what manner the publication for thirty days was made. It certainly does not show that the publication was not made "for four consecutive weeks." In the absence of allegations to the contrary, the execution of the mortgage, as it presupposes the giving of the notice as directed by the statute, is presumptive proof that the requisition of the statute in that regard was complied with. The omission of such prerequisite is defensive matter. It was not necessary to allege affirmatively that the publication was "for four consecutive weeks."—*Arrington v. Sav. & W. R. Co.*, 95 Ala. 434; *Thorington v. Gould*, 59 Ala. 461.

The corporation in question had the power "to borrow money, and to mortgage, or otherwise convey or pledge its

property, real or personal, and its franchises, to secure the payment of the money so borrowed, or any other debt contracted by it."—Code, §§ 1562 and 1664. This power was subject to the condition prescribed by the fundamental law that "no corporation shall issue stock or bonds, except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void."—Const. Ala. Art. XIV, § 6. The statutory provisions governing subscriptions for stock in business corporations and the mode of paying such subscriptions are such as to require that the amount subscribed thall be paid in money, when, by the terms of the subscription, no privilege is reserved of discharging the same by the rendition of stipulated necessary services, or the performance of stipulated necessary labor for the corporation, or in property which the corporation has the capacity to acquire and hold; or, when such privilege is reserved, in services, labor, or property of a value to correspond with the amount subscribed; and the creditors of the corporation have such an interest in the subscriptions as to entitle them, for the enforcement of their claims, to demand a *bona fide* compliance with the terms of the contracts of subscription.—Code, §§ 1560, 1561, 1662, 1663; *Elyton Land Co. v. Birmingham Warehouse & Elevator Co.*, 92 Ala. 467. The constitutional provision, standing by itself, does not require that the amount of money, or the value of the labor or property, for which stock or bonds are issued, shall correspond with the face value of the stock or bonds for which it is issued. It is the statute, reinforcing the constitutional provision, which requires such correspondence in value in the case of subscriptions for stock. In the absence of such statutory provisions, the section of the Constitution above quoted would be complied with, in the case of stock, which was not a fictitious increase, but was issued for money, labor done, or money or property actually received. In the case of bonds, there is not, as there is in the case of stock subscribed, any statutory provision requiring the value of the consideration received by the corporation to correspond with the amount, or nominal or face value, of the bonds issued therefor. Such bonds are not issued in contravention of the provision contained in the first sentence of the above mentioned section of the Constitution, if the issue does not effect a "fictitious increase of indebtedness," and if they can properly be regarded as issued "for money, labor done, or money or property actually received." The constitutional provision in question operates to invalidate evidences of indebtedness when there is in fact no debt; to

[Nelson v. Hubbard; Adams Cotton Mills v. Dimmick.]

require every issue of stocks or bonds of private corporations to represent substantial values received by the corporations; to impose upon those charged with the disposition of corporate securities the duty to procure therefor a fair and reasonable equivalent in money, labor or property actually contributed to the corporation. Courts of the highest authority, which have considered the effect of such provisions, have not construed them, when not fortified by more stringent statutory requirements, as invalidating issues of stocks and bonds in exchange for money, property or labor, upon such terms as the corporate authorities, in the fair exercise of their judgment and discretion, may deem proper, though the amount received therefor was less than the face value of the securities. The negotiation of bonds must be a real transaction carried through to promote legitimate corporate purposes, and not a mere trick or device to evade the law and impose greater obligations upon the corporation than there is any occasion for it to assume in order to obtain the consideration received thereof. Issues of stocks and bonds have been sustained under constitutional or statutory provisions of the same import as the one under consideration, when they were disposed of for the best price that could be obtained, though for considerably less than their face value.—*Memphis & Little Rock R. Co. v. Dow*, 120 U. S. 287; *Peoria & Springfield R. Co. v. Thompson*, 103 Ill. 187; *Stein v. Howard*, 65 Cal. 616; *Handley v. Stutz*, 139 U. S. 417; *Clark v. Bever, Ib.* 96; *Fogg v. Blair, Ib.* 118. The power "to borrow money, and to mortgage, or otherwise convey or pledge its property, real or personal, and its franchises, to secure the payment of the money so borrowed, or any other debt contracted by it," includes the power to pledge the bonds of the corporation, secured by its mortgage on property, as collateral security for debts of the corporation presently created or already owing.—*In re Tallassee Man. Co.*, 64 Ala. 567; *Duncomb v. N. Y. H. & N. R. Co.*, 84 N. Y. 190; 1 Morawetz on Corporations, § 349. And we do not think that such pledge, if made without fraud, and solely for the *bona fide* purpose of satisfactorily securing the payment of corporate debts, can properly be regarded as effecting a fictitious increase of indebtedness or as not issued for money, labor done, or money or property actually received, though the amount of the bonds pledged exceeds the amount of the indebtedness to be secured.

The same section of the State Constitution further provides that "the stock and bonded indebtedness of corporations shall not be increased, except in pursuance of general

laws, nor without the consent of the persons holding the larger amount in value of stock, first obtained at a meeting to be held after thirty days notice is given in pursuance of law." The general statutes authorize the increase of stock and bonded indebtedness, and establish definite requirements as to the mode of giving the thirty days notice to the stockholders.—Code, §§ 1562, 1372, 1664 and 1667. The language of the constitutional provision requiring the giving of such notice indicates that the provision was intended for the benefit of stockholders and to secure them against any impairment of the value of their interests in the corporation, by the increase of its stock or bonded indebtedness, otherwise than with the consent of those holding the larger amount in value of the stock, expressed at a meeting of which, and of the purpose thereof, each stockholder shall have had notice for such length of time as to afford him full opportunity for deliberation. The thing to be insured is that such corporate acts shall be done only with the deliberate consent of the persons interested in the corporations as its stockholders, all of whom shall have the opportunity to object. If such consent is obtained, no one else has the right to complain of the increase of the stock or bonded indebtedness. No purpose is disclosed to have these provisions serve the end of securing the giving of notice to the public generally, or to persons dealing with corporations, of the enlargement of the interests therein represented by issues of stock, or of incumbrances upon their property. Other provisions secure publicity to the fact that a corporation has been authorized to increase its capital stock. And general laws, applicable alike in the cases of corporations and of individuals, protect persons dealing with them against incumbrances on their property of which there is not notice, either actual or constructive. The view generally accepted by other courts, which have had occasion to determine the effect of similar provisions for notice to stockholders of a proposed increase of stock or bonded indebtedness, is that the only object of the prescribed notice is to inform the shareholders, and to afford them the opportunity of protecting their interests by demanding a compliance with the prescribed formalities. It has, accordingly, been held that the persons for whose protection the formalities are prescribed may waive a compliance therewith, and consent that the corporation be bound by acts informally done. In other words, there can be no complaint by others, when the stockholders themselves acquiesce in the disregard of formalities prescribed for their

benefit alone.—*Beecher v. Marquette Rolling Mill Co.*, 45 Mich. 103; *Manhattan Hardware Co. v. Phalen*, 128 Pa. St., 110; *Wood v. Corry Water Works, Co.*, 44 Fed. Rep., 146; *Thomas v. Citizens Horse R'wy. Co.*, 104, Ill. 462; 2 Morawetz on Priv. Corp. § 635. The general law of Michigan under which a manufacturing company was incorporated contained a provision that no alienation, diversion, sale or mortgage of any part of the real estate of any company formed under the act should "have any force or effect, or pass any title thereto, or interest therein, unless expressly authorized by vote of three-fifths in interest of the entire stock of said company," at a meeting called in a designated manner, and of which the stockholders were to have a prescribed notice. In *Beecher v. Marquette Rolling Mill Co., supra*, it was held, that a mortgage which had not been expressly authorized by a meeting of the stockholders called in the prescribed manner was valid, the stockholders having waived the irregularity. COOLEY, J. said: "The statute under consideration was passed to protect the interests of stockholders in mining companies. It intends that their mining property shall not be conveyed away or mortgaged except by their deliberate action after they have been notified of a proposal to do so, and have had the time to deliberate upon and fully consider it. But the matter does not concern the public at large; no principle of public policy is at stake; no wrong, direct or indirect, is done to any human being if a conveyance is made or mortgage given without the exact notice required, unless it be a wrong to the stockholders themselves. And as others are not concerned, why should the statute give them the right to raise questions of regularity which the stockholders elect to waive? We are satisfied such was not its purpose. . . . The corporators may possibly have had a right to take advantage of the exact words of the statute, repudiate their action, and treat the mortgage as of no force and effect, but they had an equal right to treat it as effective and valid. They have chosen the latter course, and this is conclusive upon the corporation, and upon any one claiming under it." We think that acts done in disregard of such formalities when prescribed may be avoided at the instance of any stockholder who has not waived the right to raise such an objection. But when all those persons whose interests can be protected by the giving of the prescribed notice deliberately waive the benefit of the provision, all reason for requiring a compliance with it is removed.

The allegations in the present case clearly show that the

pledge of the bonds and the manner in which the pledge was made were with the knowledge and consent and at the instance of all the persons having any beneficial interest in the corporation as stockholders thereof; and that this disposition of the bonds was solemnly ratified by them with full knowledge of the facts. In these circumstances, the pledge is binding, though it was not authorized by the terms of the resolution adopted at the meeting of the stockholders of which, and of the purpose thereof, notice had been given in the manner directed by the statute.

On the foreclosure of the mortgage securing the bonds pledged, the pledgee has no claim upon that part of the proceeds of the sale of the mortgaged property which is left after applying a sufficiency thereof to the satisfaction of the debt secured by the pledge.

By the terms of the mortgage or deed of trust the trustees are authorized, upon such default as is therein mentioned in the payment of the principal or interest on the bonds secured, to take possession of the mortgaged property and to use and operate the factory, and, upon the sale of the property, to be reimbursed from the proceeds of the sale for all expenses, advances or liabilities incurred in operating or maintaining the factory and premises, or in managing the business while in possession thereof. The provisions referred to secured a property right or interest which survived the dissolution of the corporation. They authorize the trustees to borrow money necessary to preserve, protect and operate the property. It would be competent for the court to direct the exercise of this power under its orders.

The parties beneficially interested in the contract evidenced by the mortgage are the corporation as the mortgagor and the holders of the bonds secured by the mortgage. The duties and powers of the trustee are fixed by the terms of the deed, and, as thus fixed, are to be exercised in behalf of the *cestuis que trustent,* who are the bondholders. The provisions of the instrument enure to the benefit of all the bondholders alike. There can be no change in the terms of the contract, without the consent of all who are to be considered as parties thereto. It is not to be supposed that any prudent man would buy a bond in the market if the provisions of the instrument for its security could be altered without his consent. The corporation can not confer or take away, and the trustees can not acquire or surrender, any powers involving a change in the terms of the mortgage, without the consent of all persons for whose security it

stands.   All the bonds issued under the mortgage were not pledged to the bank   Some of them have been negotiated or disposed of to other persons.   The terms of the mortgage could not be changed without the consent of such other persons.   No alterations in the conditions constituting a default authorizing a foreclosure could be effected by an arrangement between the mortgagor and the holder of only a portion of the issue of bonds.   Such attempted arrangement could confer no additional power on the trustees. The objection suggested by the 17th ground of demurrer was well taken.

The decree of the City Court, rendered in the two causes considered together, must be reversed, and the cause will be remanded for further proceedings in conformity with this opinion.   The costs will be taxed against the trustees in the mortgage or deed of trust.

Reversed and remanded.