If the corporation never had any lawful existence, as the defendant contends, of course it did not authorize the execution of a mortgage some months after it is claimed that it was duly organized. The statute, The Code, sec. 677, provides that "Any number of persons, not less than three, who may be desirous of engaging in any business not unlawful, except building railroads or banking or insurance, at any place within the State, may, if it please them, become(329) incorporated in the manner following," etc. It seems that three persons, Amos Ragan, O. S. Causey and R. E. Causey, as the sole corporators of a manufacturing company, having ten shares each, signed articles of agreement before the clerk of the Superior Court of Guilford County, which were duly recorded. Having complied with the requirements as to the form of the articles of agreement and caused the proper record to be made, the three persons named as sole corporators became a body politic for the purposes set forth in the agreement. The Code, secs. 678, 679. When corporate powers are granted by a special instead of a general act of the legislature, there must be evidence of acceptance by the corporators and compliance with all conditions precedent prescribed by law, in order to show affirmatively that the corporation is lawfully organized. But in our case every corporator affixed his hand and seal to the articles of agreement recorded, and by such signature and the recording of the instrument, became invested with all the powers which it was contemplated by law to confer in such cases. The Code, sec. 679. Private corporations are formed when the necessary contractual relations are created between the persons clothed by law with the powers of a body politic. 1 Morawitz, 24. The existence of the company depends upon the fact of the acceptance of the privilege (1 Morawitz, 26), and it was evidently the intent of the Legislature that the signature to the articles should be deemed an acceptance, leaving no other condition precedent to be performed, except the recording, this being a substantial compliance with the requirements of the law. 1 Morawitz, 32, 33, 27 et seq. In such cases the corporators are usually constituted only a quasi corporation, "whose sole function is to bring into existence the corporation consisting of the real body of stockholders." But in our *Page 229 
case the signers of the certificate, as appears from the recorded articles of agreement, were not only the sole corporators, but the only stockholders, and, as between themselves, constituted a corporate body, wanting only formal organization in order to transact business with the public.
The law, intending to protect the rights of minorities, requires that notice of the meetings of the stockholders of a corporation (330) shall be given to every person who holds a share of the stock, and, if no other mode of notification be provided in the charter or by-laws of a company, or by statute, express notice must be given. The owner of every unit of interest constituting a part of the aggregate body of stock is entitled to the opportunity which due notice affords him of protecting it, by being present and participating in meetings. 1 Cook on Stockholders, sec. 574. The reason for this rule is plainly met, so far as the organization of the company is concerned, when it appears that all of the stockholders assented to the call of the meeting, participated in it, and acquiesced in its consequences afterwards. The State has not complained or taken any steps to question its rights or annul its powers as a body politic. If we concede that section 665 of The Code was intended to apply in such a case as this, the only purpose of the Legislature in enacting it was to provide that every corporator should have notice of the time and place of a meeting for organization. There was no necessity for proving a compliance with the statute, when every person interested had express notice and participated in the meeting. Angell Ames on Corporations, sec. 492. The strict requirements as to notice, being intended to protect stockholders, may be waived by them, and when they do waive it, "the meeting and all proceedings are as valid as they would be had the full statutory notice been given." 1 Cook, supra, sec. 599.
It is always presumed that notice is given, and that any meeting of which a minute is found in the proceedings of the stockholders of a corporation was regularly and lawfully held, Cook, sec. 600. When a party assumes the burden of showing irregularity, and actually shows that the meeting for organization, or any subsequent one, was not called in the manner prescribed by law or the by-laws of the company, the action of the meeting will nevertheless be declared valid when it appears that every stockholder who did not participate in the (331) meeting ratified its action afterwards. Stutz v. Hendly, 41 Fed., 531; Nelson v. Hubbard, 96 Ala. 238; Campbell v. Argenta, etc.,Co., 51 Fed., 1.
If the three directors, Amos Ragan, O. S. Causey and R. E. Causey, met at High Point without notice, they being also the holders of all the stock, it was a waiver of the requirement of the by-laws that such meetings should be called by the president or a majority of the directors. *Page 230 Nelson v. Hubbard, supra; Jones v. Turnpike Co., 7 Ind. 547. Whether the directors met at Greensboro or High Point, and whether in pursuance of previous notice or not, is immaterial, if in fact they met together and agreed to create the indebtedness and authorize the execution of the mortgage to secure it; they, as stockholders and directors, constituting as they did the whole of each body, waived objection to the want of the notice prescribed by the by-laws, and the failure to make a record of their proceedings at that time does not affect the validity of their action. Hendly v. Stutz, 139 U.S. 417. The signing of the minutes at another time would not affect the validity of the action of the board, if in fact all three met, discussed the question of executing the mortgage and agreed to what was afterwards entered on the minutes and signed by them. It is true that the assent of each of the three, obtained at different times or places, to a certain course of proceedings would not bind them, because it would not be the action of the directors as a collective body; but if as a body they assembled together and conferred in taking certain action, they waived all objection to irregularities, though the meeting may have been informal and the minutes may not have been then recorded. The case of Duke v. Markham, 105 N.C. 131, is clearly distinguishable in that there the stockholders at no time assembled as a body, but the assent of each individual was asked and obtained separately. It is not contended that the consent of each individual has (332) the same force as the concurrence of all assembled together, given after an opportunity to discuss their proceedings, interchange views and to acquire benefit of such consultation.
A corporation must at least affix its seal to such instruments as would be invalid if executed by a natural person without a seal. 1 Morawitz Pr. Corp., sec. 338. It was therefore essential that the seal should be affixed to the mortgage. If R. E. Causey, the secretary and treasurer, was authorized to sign the instrument, as agent, it will be presumed that what purported to be a seal, and would have been declared sufficient if attached to his signature as an individual, was the seal of the corporation affixed in accordance with the recital in the attestation clause. 2 Cook, supra, sec. 722. That clause is as follows: "In testimony whereof the said party of the first part has caused this deed to be signed by its secretary and treasurer and two stockholders, and sealed with its corporate seal.
 "R. E. CAUSEY, Sec. and Treas. [SEAL.] "O. S. CAUSEY. [SEAL.] "R. E. CAUSEY. [SEAL.]
The deed was made in the name of the corporation (Crown Mills) inserted in the body of it as the grantor, and if it can be shown that *Page 231 
R. E. Causey, the secretary and treasurer, was the agent of the company, clothed with authority from the corporation to execute a mortgage of its property, the form of attestation adopted would be practically that approved by Cook, supra, sec. 723, note. But it is contended that the secretary and treasurer was empowered only "to execute the company's obligation to the amount of $12,000, and to secure the same by executing a mortgage on machinery now owned by the company," whereas the mortgage was, in fact, given to secure a debt incurred previously by O. S. Causey for money loaned by the plaintiff to buy the machinery, afterwards turned over to the corporation to be used in the mills, the seizure of which on several executions by the defendant as sheriff (333) giving rise to this controversy. The authority given was to execute the company's obligation, without specifying for what purpose or for what consideration. The property was, in fact, conveyed to secure the payment of the money with which the property in controversy was bought. O. S. Causey had obtained the money from the plaintiff to buy the machinery for a company to be thereafter organized, and had attempted to transfer the title to the machinery, as purchased, to the plaintiff.
After the formation of the corporation this property was turned over to it, and the purpose in executing the mortgage was to secure the money advanced to buy it. If we admit that it is questionable whether there was any obligation on the part of the corporation to pay the debt, it must nevertheless be conceded that every director and stockholder had notice of the execution of the instrument by the secretary and treasurer claiming to be acting as agent of the company. It might have been sufficient to estop them to show that with notice of the execution they took no steps to disaffirm the mortgage deed (2 Morawitz, sec. 631), but it seems clear that they cannot disavow the act of the agent. This is not a question as to the validity of a mortgage deed. It is conceded that the subsequent ratification by the directors or stockholders of an invalid deed or one not in form a mortgage would not validate it so as to create a lien superior to any other lien attaching in the interval between the execution or registration and the ratification. But in our case the ratification is accomplished by signing before the delivery or registration of the deed, and it is registered in such shape that its validity as a lien can only be questioned by showing, in rebuttal of the presumption of authority, that the agent purporting to act was not in fact empowered to do so. There was no seal attached to the paper offered in Duke v. Markham, supra, and purporting to be a deed, and ratification would not have made it a mortgage deed, while no act of the (334) company by amendment or otherwise could have made it relate back so as to give it the force of a lien from registration superior to *Page 232 
such liens as attached when it stood upon the record in its original form. A private corporation, not charged with any duty to the public, and notquasi public in its character, may dispose of its property (as certainly distinguished from its franchise) without express authority from the Legislature by virtue of the general right of alienation that is an incident of ownership by natural or artificial persons. 4 A. E., 238;Paper Co. v. Chronicle, ante, 143. We do not think that this is a case in which the statute limiting the liability that may be incurred by executing contracts of corporations (Code, sec. 683) applies, if that statute be still in force, as to existing suits. Laws 1893, cc. 84 and 388. There was no executory contract in this case. The corporation executed, if anything, a mortgage deed conveying its property.
For the reasons given, we think that the judge below erred in ruling that the plaintiffs are not entitled to recover in any aspect of the evidence, and we must therefore grant a
New trial.
Cited: Powell v. Lumber Co., 153 N.C. 55.
(335)