D. W. C. BENBOW v. J. W. COOK.

*Corporation— Organization of Corporation—Meetings of Stockholders—Notice—Mortgage, Validity of.*

1. When corporate powers are granted by a special act of the Legislature, there must be evidence of the acceptance by the corporators of the privileges conferred and compliance with all conditions precedent prescribed by law in order to show affirmatively that the corporation is lawfully organized. It is otherwise when the corporation is formed under the general law, for by the signing of the articles of agreement and the due recording thereof, the corporators become a body politic for the purposes set forth in the agreement.

BENBOW *v.* COOK.

2. In order to protect the rights of minorities the law requires that notice of the meetings of the stockholders of a corporation shall be given to every shareholder, either by the method prescribed in the charter or by-laws, or by express notice, but where it appears that every person interested had express notice and participated in a meeting, there is no necessity for proving a compliance with the statute (section 665 of *The Code*) as to such notice.

3. When a minute of the proceedings of stockholders or directors of a corporation is made, it is presumed that notice was duly given, and that the meeting was regularly and lawfully held.

4. Although it be actually shown that a meeting of the stockholders of a corporation was not called in the manner prescribed by law or the by-laws of the company, the action of the meeting will nevertheless be declared valid when it appears that every stockholder who did not participate in the meeting ratified its action afterwards.

5. When three directors, being all of the directors of a corporation, and also the holders of all the stock of the company, met without notice and agreed to create an indebtedness, and authorized the execution of a mortgage to secure it, and failed to make a record of their proceedings, but subsequently made and signed minutes of said proceedings: *Held*, that the action of such directors and stockholders was valid. (*Duke* v. *Markham*, 105 N. C., 131, *distinguished*.)

6. When a corporation deed recites that it is sealed with the corporate seal, it will be presumed that what purports to be such seal, placed after the name of the officer executing the deed, is the seal of a corporation.

7. A private corporation may dispose of its property without express authority of the Legislature.

8. A mortgage deed of corporate property is not an executory contract within the meaning of section 683 of *The Code*.

CIVIL ACTION, tried before *Shuford, J.*, and a jury, at February Term, 1894, of GUILFORD Superior Court.

The plaintiff sued to recover possession or damages for the non-delivery of certain cotton mill machinery which he claimed under a mortgage by the Crown Mills Corporation, and which the defendant Cook as Sheriff seized and sold under executions in his hands against said corporation.

The defendant denied the validity of the mortgage, first

because the corporation was not lawfully organized, in that the corporators did not lawfully assemble together and give their collective assent in meeting assembled to the adoption of by-laws and other acts alleged in the record of their meeting; second, because the alleged mortgage was not authorized by the by-laws nor by the corporation.

The Crown Mills was incorporated before the Clerk of the Superior Court of Guilford County, and the record of the organization offered in evidence was as follows:

" GREENSBORO, N. C., March 17, 1890.

" Pursuant to a call heretofore authorized and signed by A. A. Holton, Clerk of Superior Court of Guilford County, N. C., the same being published as required by law, and certified to by said Clerk on the 14th day of February, 1890, a meeting of the corporation and stockholders of the Crown Mills took place at 12 o'clock noon on the 17th day of March, 1890, at the office of the Crown Mills.

"Present: Amos Ragan, R. E. Causey, O. S. Causey, corporators and subscribers to the stock of the company.

" On motion, O. S. Causey was called temporarily to the chair and acted as Secretary *pro tem.*

" On request of the chairman, R. E. Causey read to the meeting the plan of the corporation, the permit to open books of subscription, the call for this meeting, the certificate of the publication of such call signed by A. A. Holton, Clerk of Superior Court, dated February 14, 1890; the number of subscribers to stock and the amount of their subscription. It was ascertained that a sufficient amount of the capital stock had been subscribed as required by law, to-wit, the following amounts:

" Amos Ragan, ten shares; O. S. Causey, ten shares; R. E. Causey, ten shares, making in all thirty shares of one hundred dollars each, amounting to the par value of three thousand dollars.

" On motion of R. E. Causey, it was decided to fix the number of directors at three, and the election thereof was proceeded with, when the following were unanimously chosen directors :

" O. S. Causey, R. E. Causey, Amos Ragan, who proceeded to elect the following officers :

" Amos Ragan for President, and R. E. Causey for Secretary and Treasurer, the same being accepted and ratified by the stockholders, when the following was unanimously adopted as the by-laws," etc.

The testimony tended to show that the incorporators were not all present at the meeting, but that the record was entered in a book purporting to be the record book of the company, and afterwards signed by all the stockholders.

The record of the proceedings of the directors at which the alleged mortgage was authorized was as follows :

" Pursuant to a call by the President, the directors met this day for the purpose of transacting business relative to negotiating a loan of money for the use of the company. Present: Amos Ragan, R. E. Causey, O. S. Causey. And in accordance to previous understanding it was ordered by this board of directors that R. E. Causey, Treasurer, be and he is hereby authorized to execute the company's obligation to the amount of twelve thousand dollars, and to secure the same by executing a mortgage on the machinery now owned by the company. And he is hereby authorized to execute other obligations of the company not to exceed ten thousand dollars, and secure the same by mortgage or otherwise as he may determine; said moneys to be used in the due course of the company's business.

" AMOS RAGAN, *President;*

" R. E. CAUSEY, *Sec. and Treas. ;*

" O. S. CAUSEY.

"Greensboro, April 24, 1890."

There was testimony tending to show that there was no call issued for the meeting at Greensboro on April 24, 1890; that all did not meet 'there that day, but that they talked over the matter of the mortgage at High Point about that time, and subsequently, after the minutes had been entered on the book as the minutes of the meeting of April 24, the books were carried to High Point, where they were signed by the three (being all of the) stockholders and directors.

The mortgage was signed—

R. E. CAUSEY, *Sec. and Treas.*    [SEAL.]
O. S. CAUSEY.                      [SEAL.]
R. E. CAUSEY.                      [SEAL.]

An alleged corporate seal was also affixed to the instrument. There was no record or other evidence of the adoption by the corporation of a seal, but the Secretary and Treasurer testified that he knew the seal of the company, and that the seal affixed to the instrument and purporting to be the corporate seal of the company was such seal.

Upon the conclusion of the testimony, and an intimation from his Honor that the plaintiff could not recover, the latter submitted to a nonsuit and appealed.

*Mr. L. M. Scott,* for plaintiff (appellant).
*Messrs. Schenck & Schenck* and *W. W. Fuller,* for defendant.

AVERY, J.: If the corporation never had any lawful existence, as the defendant contends, of course it did not authorize the execution of a mortgage some months after it is claimed that it was duly organized. The statute, *The Code,* § 677, provides that "Any number of persons, not less than three, who may be desirous of engaging in any business not unlawful, except building railroads or banking or insurance, at any place within the State, may, if it please them, *become incorporated* in the manner following," etc.    It seems

that three persons, Amos Ragan, O. S. Causey and R. E. Causey, as the sole corporators of a manufacturing company, having ten shares each, signed articles of agreement before the Clerk of the Superior Court of Guilford County, which were duly recorded. Having complied with the requirements as to the form of the articles of agreement and caused the proper record to be made, the three persons named as sole corporators became a body politic for the purposes set forth in the agreement. *The Code*, §§ 678, 679. When corporate powers are granted by a special instead of a general. act of the Legislature, there must be evidence of acceptance by the corporators and compliance with all conditions precedent prescribed by law, in order to show affirmatively that the corporation is lawfully organized. But in our case every corporator affixed his hand and seal to the articles of agreement recorded, and by such signature and the recording of the instrument, became invested with all the powers which it was contemplated by law to confer in such cases. *The Code*, § 679. Private corporations are formed when the necessary contractual relations are created between the persons clothed by law with the powers of a body politic. 1 Morawitz, 24. The existence of the company depends upon the fact of the acceptance of the privilege (1 Morawitz, 26), and it was evidently the intent of the Legislature that the signature to the articles should be deemed an acceptance, leaving no other condition precedent to be performed, except the recording, this being a substantial compliance with the requirements of the law. 1 Morawitz, 32, 33, 27 *et seq.* In such cases the corporators are usually constituted only a *quasi* corporation, " whose sole function is to bring into existence the corporation consisting of the real body of stockholders." But in our case the signers of the certificate, as appears from the recorded articles of agreement, were not only the sole corporators, but the only stockholders, and, as between themselves, constituted a corporate body, wanting only formal organization in order to transact business with the public.

The law, intending to protect the rights of minorities, requires that notice of the meetings of the stockholders of a corporation shall be given to every person who holds a share of the stock, and, if no other mode of notification be provided in the charter or by-laws of a company, or by statute, express notice must be given. The owner of every unit of interest constituting a part of the aggregate body of stock is entitled to the opportunity which due notice affords him of protecting it, by being present and participating in meetings. 1 Cook on Stockholders, § 574. The reason for this rule is plainly met, so far as the organization of the company is concerned, when it appears that all of the stockholders assented to the call of the meeting, participated in it, and acquiesced in its consequences afterwards. The State has not complained or taken any steps to question its rights or annul its powers as a body politic. If we concede that section 665 of *The Code* was intended to apply in such a case as this, the only purpose of the Legislature in enacting it was to provide that every corporator should have notice of the time and place of a meeting for organization. There was no necessity for proving a compliance with the statute, when every person interested had express notice and participated in the meeting. Angell & Ames on Corporations, § 492. The strict requirements as to notice, being intended to protect stockholders, may be waived by them, and when they do waive it, " the meeting and all proceedings are as valid as they would be had the full statutory notice been given." 1 Cook, *supra*, § 599.

It is always presumed that notice is given, and that any meeting of which a minute is found in the proceedings of the stockholders of a corporation, was regularly and lawfully held. Cook, § 600. When a party assumes the burden of showing irregularity, and actually shows that the meeting for organization, or any subsequent one, was not called in the manner prescribed by law or the by-laws of the company, the action of the meeting will nevertheless be declared valid

when it appears that every stockholder who did not participate in the meeting ratified its action afterwards.  *Stutz* v. *Hendly,* 41 Fed. Reporter, 531; *Nelson* v. *Hubbard,* 96 Ala., 238; *Campbell* v. *Argenta, etc., Co.,* 51 Fed. Reporter, 1.

If the three directors, Amos Ragan, O. S. Causey and R. E. Causey, met at High Point without notice, they being also the holders of all the stock, it was a waiver of the requirement of the by-laws that such meetings should be called by the president or a majority of the directors.  *Nelson* v. *Hubbard, supra; Jones* v. *Turnpike Co.,* 7 Ind., 547.  Whether the directors met at Greensboro or High Point, and whether in pursuance of previous notice or not, is immaterial, if in fact they met together and agreed to create the indebtedness and authorize the execution of the mortgage to secure it, they, as stockholders and directors constituting; as they did, the whole of each body, waived objection to the want of the notice prescribed by the by-laws, and the failure to make a record of their proceedings at that time does not affect the validity of their action.  *Hendly* v. *Stutz,* 139 U. S., 417.  The signing of the minutes at another time would not affect the validity of the action of the board, if in fact all three met, discussed the question of executing the mortgage and agreed to what was afterwards entered on the minutes and signed by them.   It is true that the assent of each of the three, obtained at different times or places, to a certain course of proceeding, would not bind them, because it would not be the action of the directors as a collective body; but if as a body they assembled together and conferred in taking certain action they waived all objection to irregularities, though the meeting may have been informal and the minutes may not have been then recorded.  The case of *Duke* v. *Markham,* 105 N. C., 131, is clearly distinguishable in that there the stockholders at no time assembled as a body, but the assent of each individual was asked and obtained separately.  It is not contended that the consent of each individual has the

same force as the concurrence of all assembled together, given after an opportunity to discuss their proceedings, interchange views, and to acquire benefit of such consultation.

A corporation must at least affix its seal to such instruments as would be invalid if executed by a natural person without a seal. 1 Morawitz Pr. Corp., sec. 338. It was therefore essential that the seal should be affixed to the mortgage. If R. E. Causey, the Secretary and Treasurer, was authorized to sign the instrument, as agent, it will be presumed that what purported to be a seal, and would have been declared sufficient if attached to his signature as an individual, was the seal of the corporation affixed in accordance with the recital in the attestation clause. 2 Cook, *supra*, sec. 722. That clause is as follows: " In testimony whereof the said party of the first part has caused this deed to be signed by its Secretary and Treasurer and two stockholders, and sealed with its corporate seal.

(Signed)        " R. E. CAUSEY, *Sec. and Treas.*        [SEAL.]
                " O. S. CAUSEY.        [SEAL.]
                " R. E. CAUSEY.        [SEAL.]"

The deed was made in the name of the corporation (Crown Mills) inserted in the body of it as the grantor, and if it can be shown that R. E. Causey, the Secretary and Treasurer, was the agent of the company, clothed with authority from the corporation to execute a mortgage of its property, the form of attestation adopted would be practically that approved by Cook, *supra*, section 723, note. But it is contended that the Secretary and Treasurer was empowered only " to execute the company's obligation to the amount of $12,000, and to secure the same by executing a mortgage on machinery now owned by the company," whereas the mortgage was, in fact, given to secure a debt incurred previously by O. S. Causey for money loaned by the plaintiff to buy the machinery, afterwards turned over to the corporation to be

used in the mills, the seizure of which on several executions by the defendant as Sheriff giving rise to this controversy. The authority given was to execute the company's obligation, without specifying for what purpose or for what consideration. The property was, in fact, conveyed to secure the payment of the money with which the property in controversy was bought. O. S. Causey had obtained the money from the plaintiff to buy the machinery for a company to be thereafter organized, and had attempted to transfer the title to the machinery, as purchased, to the plaintiff.

After the formation of the corporation this property was turned over to it, and the purpose in executing the mortgage was to secure the money advanced to buy it. If we admit that it is questionable whether there was any obligation on the part of the corporation to pay the debt, it must nevertheless be conceded that every director and stockholder had notice of the execution of the instrument by the Secretary and Treasurer claiming to be acting as agent of the company. It might have been sufficient to estop them to show that with notice of the execution they took no steps to disaffirm the mortgage deed (2 Morawitz, § 631), but it seems clear that they cannot disavow the act of the agent. This is not a question as to the validity of a mortgage deed. It is conceded that the subsequent ratification by the directors or stockholders of an invalid deed or one not in form a mortgage would not validate it so as to create a lien superior to any other lien attaching in the interval between the execution or registration and the ratification. But in our case the ratification is accomplished by signing before the delivery or registration of the deed, and it is registered in such shape that its validity as a lien can only be questioned by showing, in rebuttal of the presumption of authority, that the agent purporting to act was not in fact empowered to do so. There was no seal attached to the paper offered in *Duke* v. *Markham*, *supra*, and purporting to be a deed, and ratification

would not have made it a mortgage deed, while no act of the company by amendment or otherwise could have made it relate back so as to give it the force of a lien from registration superior to such liens as attached when it stood upon the record in its original form. A private corporation, not charged with any duty to the public, and not *quasi* public in its character, may dispose of its property (as certainly distinguished from its franchise) without express authority from the Legislature by virtue of the general right of alienation that is an incident of ownership by natural or artificial persons. 4 Am. and Eng. Enc., p. 238 ; *Paper Co.* v. *Pub. Co.*, at this term. We do not think that this is a case in which the statute limiting the liability that may be incurred by executing contracts of corporations (*Code*, § 683), applies, if that statute be still in force, as to existing suits. Laws 1893, chapters 84 and 388. There was no executory contract in this case. The corporation executed, if anything, a mortgage deed conveying its property.

For the reasons given, we think that the Judge below erred in ruling that the plaintiffs are not entitled to recover in any aspect of the evidence, and we must therefore grant a new trial.                                              New Trial.