WOOD *et al. v.* CORRY WATER-WORKS CO. *et al.*

(*Circuit Court, W. D. Pennsylvania.* November 24, 1890.)

CORPORATIONS—ISSUE OF BONDS—VALIDITY—ESTOPPEL.

The Corry Water-Works Company, a corporation of the state of Pennsylvania, in accordance with a contract for the construction of its works, and with the consent of all its stockholders, expressed by vote at a meeting called only for the purpose of increasing its stock, issued to the contractors who built the works, in settlement, its bonds, payable to bearer, amounting to $100,000, secured by a trust mortgage, and also $125,000 of stock. The contractors sold the bonds before maturity, in the open market, for a large price, the purchaser having no knowledge of anything affecting their validity. Upon default in payment of interest, the mortgage trustee, under a power conferred by the mortgage, was proceeding to sell the mortgaged property, when the plaintiffs, who had acquired some of the stock so issued to the contractors, filed a bill to enjoin the sale upon the grounds that the debt was not authorized by a previous meeting and consent of the stockholders, as prescribed by section 7, art. 16, of the constitution of Pennsylvania, and the law of the state; that, in violation of the law, the amount of bonds issued exceeded one-half of the capital stock paid in; and that by the issue to the contractors there was a fictitious increase of indebtedness and stock, in violation of said constitutional provision

*Held,* (1) That as all the stockholders of the water-works company when assembled voted in favor of the issue of the bonds, neither the corporation nor the plaintiffs had any standing to complain of a want of compliance with the directions of the constitution and statute, as to previous notice to and the consent of the stockholders at a meeting called for the purpose. (2) That the corporation having received and enjoyed the fruits of its mortgage bonds, it was not competent for it, or the plaintiffs, to assail their validity in the hands of a *bona fide* purchaser for value, on the ground that the issue was in excess of one-half the capital stock paid in. (3) That as the proofs show that the actual expenditure by the contractors was greatly in excess of the whole issue of bonds, there is really no ground for the assertion that the indebtedness so created was fictitious; and if the construction contract, as a whole, offended against the constitutional and statutory provisions here invoked, the corrective power resides in the commonwealth, which alone can now complain of the completed transaction. (4) That the bill of complaint should be dismissed.

In Equity.

*Samuel Dickson* and *R. C. Dale,* for complainants.

*George Shiras, Jr.,* and *Johns McCleave,* for defendant Farmers' Loan & Trust Company.

ACHESON, J. On the 29th day of March, 1886, the firm of Samuel R. Bullock & Co. and the Corry Water-Works Company, a corporation of the state of Pennsylvania, entered into a contract whereby the former agreed to construct for the latter water-works in the city of Corry, Erie county, Pa., according to certain plans and specifications, and to pay all the expenses, legal fees, and salaries, which might be needed to maintain and operate the works for a period of six months after completion, and to pay the first six-months interest,—viz. $3,000,—on the hereinafter mentioned mortgage bonds of the water company; and, in consideration thereof, the water-works company agreed to issue and deliver to said Bullock & Co. $100,000 in bonds, and $125,000 in the full paid-up non-assessable stock of the water-works company. Bullock & Co. proceeded to construct the water-works, and fulfilled their part of the contract, and the water-works company issued and delivered to them the bonds and stock, as agreed on. The bonds bear date April 1, 1886, are each of the denomination of $1,000, and are payable to Samuel R. Bullock & Co., or bearer, on the 1st day of April, 1916, with interest coupons annexed payable to bearer, semi-annually, and the bonds are secured by a mortgage, or deed of trust, of even date covering all the property, real and personal, rights, privileges, and franchises of the water-works company, executed and delivered by said company to the Farmers' Loan & Trust Company, (defendant in this suit,) a corporation of the state of New York, as trustee. The last-named company accepted the trust, and the mortgage, or trust-deed, was duly recorded in the county of Erie, Pa., on April 13, 1886. In the month of October, 1886, the National Water-Works Investment Company, a corporation of the state of New York, purchased from Samuel R. Bullock & Co. all of said bonds, together with $50,000 of their said stock, for the cash price of $90,000, which sum was paid to Bullock & Co. by said investment company upon the delivery of the bonds, and said bonds are still owned by that company. The water-works company made default in the payment of the interest on said bonds, due April 1, 1889, and thereupon,

and in accordance with the terms of the mortgage, or trust-deed, the National Water-Works Investment Company, the holder of the whole issue of said bonds, elected, as it had the right to do, to declare the principal of the bonds to be due and payable; and, after such election, the default still continuing, the Farmers' Loan & Trust Company, the trustee, upon the written request of the holder of the bonds, took possession of the property embraced in the mortgage, or trust-deed, for the purposes therein declared; and, in further execution of the power thereby conferred, advertised, at public sale, and was about to proceed so to sell the mortgaged property and the rights and franchises of the water-works company, when the bill in this case was filed by the plaintiffs, R. D. Wood & Co., stockholders of the Corry Water-Works Company.

·The main purpose of the bill is to enjoin the exercise by the Farmers' Loan & Trust Company of the power of sale given by the said trust mortgage, on the ground that the same is an invalid instrument, and conferred no estate or rightful authority upon the trustee. In support of this proposition, three reasons were assigned and urged by the plaintiffs' counsel at the final hearing, namely:

"*First.* Because the issue of bonds which it attempts to secure was an increase of the corporate indebtedness without the consent of the persons holding the larger amount in value of the stock obtained at a meeting to be held after sixty days notice. *Second.* Because the amount of mortgage bonds issued exceeded one-half of the capital stock paid in, the evidence in the cause showing, substantially, that nothing was ever paid in on account of the capital stock. *Third.* Because it appears from the evidence that, by the attempted issue of stock and bonds to Bullock & Co., under the construction contract, there was a fictitious increase of stock and indebtedness, which, by the terms of the constitution, are void."

The plaintiffs rely upon the provisions of the corporation laws of the commonwealth of Pennsylvania, which limit the right of such a corporation to issue bonds secured by a mortgage to an amount not exceeding one-half the capital stock paid in, and require the previous consent of the stockholders at a meeting called for the purpose, and upon section 7 art. 16, of the constitution of the state, which provides:

"No corporation shall issue stocks or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void. The stock and indebtedness of corporations shall not be increased, except in pursuance of general law, nor without the consent of the persons holding the larger amount in value of the stock first obtained at a meeting to be held after sixty days' notice given in pursuance of law.".

· Before approaching the consideration of the legal questions involved, certain matters of fact must be stated. It appears that the meeting of the stockholders of the water-works company, at which the issue of the mortgage bonds was authorized, was not called for that purpose, but to vote upon the proposition to increase the capital stock from $20,000 to $200,000. It is, however, shown that all the stockholders of the company except one,—viz., Charles S. Wallace,—were present at that meeting, and voted in favor of the issue of the bonds and the execution of the mortgage, or trust-deed, to secure them; and it is further satisfactorily

established that Wallace was only the nominal owner of the stock standing in his name, and that the real owner thereof was Ellis Morrison, who was present at the meeting and voted in favor of the issue of the mortgage bonds. Furthermore, the trust-mortgage on its face bears this recital:

"And whereas, this form of mortgage, or trust-deed, was, at a meeting of the stockholders of the water company, held on the 29th day of March, A. D., 1886, duly approved and ratified, and the proper officers directed to execute the same in the name of the water company."

The bill alleges that the cost of the construction of the said waterworks was only about $60,000, but the proofs do not sustain this allegation. On the contrary, Samuel R. Bullock testifies that the entire cost, including the expenses the contractors assumed for the first six months after completion, etc., "was in the neighborhood of $121,000," and I do not see why this estimate should not be accepted as substantially correct. The plaintiffs claim to be the owners of 1,420 shares of the stock of the Corry Water-Works Company. The whole of this stock, however, came from Samuel R. Bullock & Co. originally, and was part of the stock that firm received from the water-works company, under their construction contract. The plaintiff's title to 920 shares of this stock is under an assignment from said firm, dated November 10, 1888, and they have possession of the stock certificate for these 920 shares. But, in fact, that certificate had been surrendered to the company for cancellation, and other certificates had been issued for at least part of this stock, and how much stock, if any, the plaintiffs are entitled to on this certificate is not shown. The plaintiffs' title to the other 500 shares of stock is good. They acquired those shares in February, 1889, from the National Water-Works Investment Company, at a valuation of one dollar per share, the transaction being this: The plaintiffs were creditors of Samuel R. Bullock & Co., and held, as collateral securities for their claims, stocks in various water-works companies; and the investment company was also the holder of such stocks which had been acquired from said firm. Upon the failure of that firm, with a view to a severance of their interests, mutual stock transfers were made between the plaintiffs and the investment company, and the plaintiffs thus acquired said 500 shares of the Corry Water-Works Company's stock at the valuation mentioned.

Upon the undisputed facts, it is very difficult to see the standing the plaintiffs have in a court of equity, in virtue of any rights of their own, to assail the transaction between the Corry Water-Works Company and Samuel R. Bullock & Co., of which they complain. *Dimpfel* v. *Railroad Co.*, 110 U. S. 209, 3 Sup. Ct. Rep. 573; *Appeal of Columbia Nat. Bank*, 16 Wkly. Notes Cas. 357; *Graham* v. *Railroad Co.*, 102 U. S. 148; *Monroe* v. *Smith*, 79 Pa. St. 459. They were not shareholders of the corporation at the time of the transaction, and were not injured by what took place. The contract had been fully executed long before the plaintiffs acquired their shares of stock, and they took them with full knowledge that the bonds and mortgage

of the corporation were outstanding and unpaid. Moreover, the very stock ·they now·hold was part of the issue to Samuel R. Bullock & Co., under the construction contract which they now impugn. But in this controversy the plaintiffs may be considered as representing the corporation itself, and clothed with its rights. It is then open to the corporation to defend against the bonds and mortgage, or trust-deed, or to question their validity? At the outset of the discussion, it is to be borne in mind that the bonds are negotiable instruments, and were purchased before maturity in the open market, for a large price, by the National Water-Works Investment Company, without notice of anything affecting their validity. Furthermore, this is not a case of a total want of power in the corporation to act. Undoubtedly, the Corry Water-Works Company had the right to create an indebtedness for the purpose of constructing its works, and to issue therefor bonds secured by a mortgage, or trust-deed; and the utmost that can be said in impeachment of its action is that, in the exercise of the power, it did not conform to the requirements and limitations which the law imposed upon the company. But, in *Oil Creek, etc., R. Co.* v. *Pennsylvania Transp. Co.*, 83 Pa. St. 160, it was distinctly ruled by the supreme court of Pennsylvania that where a corporation has entered into a contract which has been fully executed ·by the other party, and nothing remains to be done but for it to pay the consideration money, it will not be allowed to set up that the contract was *ultra vires*. And in *Wright*·v. *Pipe Line Co.*, 101 Pa.·St. 204, it was held that where a corporation, although prohibited by its charter, contracted for the purchase of stock in another corporation, and the contract was executed by the delivery of the stock, in an action on a promissory note given for the price of the stock, in the hands of a holder for value, it could not defend on the ground that the contract was beyond its corporate powers.

Turning now to the specific objections urged against the validity of the bonds and trust mortgage, we find that in the case of the *Appeal of Columbia Nat. Bank, supra,* in which an issue of corporate stock was involved, the supreme court of Pennsylvania held that the only object of the prescribed notice of a proposed increase of stock was to give information to the shareholders, and if they had such knowledge from any source it was enough. Now, every shareholder of the Corry Water-Works Company was present when the issue of the ·bonds and trust mortgage was determined on, and all voted in favor of that measure. Again, in *Hardware Co.* v. *Phalen*, 128 Pa. St. 110, 18 Atl. Rep. 428, where, to a *scire facias* on a mortgage of a corporation, the receiver of the corporation made defense that the debt was not authorized by a previous meeting and consent of stockholders, as directed by section 7, art. 16 of the constitution, and the act of April 18, 1874, the defense was overruled, the court holding that when. a corporation has received the benefit of money borrowed on its mortgage, and the stockholders knew of it, and made no objection within a reasonable time to the lack of authority in the corporate officers to make the loan, neither the corporation, its stockholders, nor its creditors can set up such want of authority in a suit on

the mortgage, nor can the receiver of the company do so for them. In *Reed's Appeal*, 122 Pa. St. 565, 16 Atl. Rep. 100, it was declared by the court that a contractor who had knowledge that under a trust mortgage of a corporation the issue of bonds was in excess of the capital stock paid in, and who was a participant in the fraud of such issue, could not attack the validity of the mortgage as in violation of the statute. No more, in my judgment, is it competent for the corporation itself, which has received and enjoys the fruits of its mortgage bonds, to assail their validity in the hands of a *bona fide* purchaser for value, on such ground.

We have already seen that the consideration which passed from Samuel R. Bullock & Co. to the Corry Water-Works Company was largely in excess of the whole issue of mortgage bonds, and this, too, without taking into consideration a contractor's profit. Therefore, there is really no ground for the assertion that the indebtedness so created was fictitious, and, certainly, under the facts of this case, neither the corporation nor its stockholders can be heard so to allege to the prejudice of the innocent bondholder. If the construction contract, as a whole, offended against the constitutional and statutory provisions here invoked, the corrective power resides in the commonwealth, which alone can now complain of the completed transaction. *Appeal of Columbia Nat. Bank, supra.* This principle, which indeed is decisive of the entire case, was recognized as sound, and was enforced in *Bank* v. *Matthews*, 98 U. S. 621, where a mortgagor sought to enjoin a sale of the mortgaged premises under a power contained in the mortgage, on the ground that it was taken in violation of the national banking law; and in *Fritts* v. *Palmer*, 132 U. S. 282, 10 Sup. Ct. Rep. 93, where a foreign corporation had purchased land, and taken a conveyance thereof in direct violation of the laws of the state in which the land was situated, it was, nevertheless, held that the corporation took the title as against its grantor and his subsequent grantee, and that it was for the state alone to question the validity of the deed of conveyance to the corporation.

Let a decree be drawn dismissing the bill of complaint, with costs.