## STATE ex rel. WALCOTT v. HARDISTER.

No. 15045—Opinion Filed April 29, 1924.

Rehearing Denied Sept. 16, 1924.

Application to File Second Petition Denied Feb. 24. 1925.

(Syllabus.)

1. **Banks and Banking — Failed Banks — Double Liability of Stockholders—Fictitious Issue of Stock.**

Where an action is instituted by the Bank Commissioner of the state to recover the double liability imposed by section 4122, Comp. Stat. 1921, as a general rule, all persons whose names are on the books of the bank, as the absolute owners of the stock, are liable as stockholders, and if one knowingly permits his name to appear upon the stock book of the bank as a shareholder, he will be estopped from denying liability, in an action brought to collect the double liability. This general rule does not apply, however, when the stock appearing in the name of the defendant is a part of a fictitious and invalid increase of the capital stock. which has been issued in violation of the provisions of section 39, art. 9, of the Constitution and sections 4118 and 5319, Comp. Stat. 1921.

2. **Same.**

Certificate of stock issued in excess of the certificates representing the full authorized stock of the corporation constitutes over-issued stock and is spurious and void, and, standing in the name of a person on the books of the corporation, it represents nothing, confers no rights on him, and subjects him to no liability. Such person cannot by estoppel or otherwise become a stockholder in respect to it, and cannot by estoppel, be subjected to the stockholder's liability imposed by section 4122, Comp. Stat. 1921.

Error from District Court, Washington County; H. C. Farrell, Judge.

Action by the State on the relation of Roy Walcott, State Bank Commissioner, against E. L. Hardister. Judgment for defendant, and plaintiff brings error. Affirmed.

J. T. McIntosh and Norman Barker, for plaintiff in error.

Rowland & Talbot, for defendant in error.

COCHRAN, J. Suit was filed by the State Bank Commissioner against E. L. Hardister to enforce the statutory stockholders' liability against him as a stockholder in the insolvent Bartlesville State Bank. At the time the bank was taken over by the Bank Commissioner, the defendant appeared on the books of the corporation as the owner of 25 shares of stock, of the par value of $100 each.

The defendant filed an answer and cross-petition, in which it was alleged that the stock which stood in the defendant's name on the books of the corporation was a part of a fictitious increase of capital stock of the corporation; that the stock was void and spurious, as such stock was issued in violation of the provisions of the Constitution and the statutes. The defendant further alleged that he purchased said stock relying upon the representations of the president of the bank that said stock was a part of a valid increase of the capital stock of the corporation.

The defendant asked that the plaintiff take nothing and that he have judgment against the Bartlesville State Bank, and the Bank Commissioner of the state of Oklahoma, for the purchase price of the stock. The case was tried to the court and special findings of fact were made by the court, a portion of which is as follows:

"The court finds that the defendant, E. L. Hardister, at the time the said bank was closed, was the holder of a certificate No. 125, purporting to represent 25 shares of stock of the Bartlesville State Bank of the par value of $100 per share. The court finds that said certificate of stock purported to be a part of the capital stock of said bank, alleged to have been made pursuant to a stockholders' meeting, held August 8, 1921. The court finds that the said E. L. Hardister paid for said stock the total sum of $4,375, and that he made such payment on the 1st day of November, 1921. The court finds that the minute book of said bank shows the record of a stockholders' meeting on the 8th day of October, 1921, authorizing the increase of the capital stock of said bank from $100,000 to $150,000. The court finds that there was no meeting of the stockholders held on the 8th day of October, 1921, and there had been no call issued for such meeting, and no notice given to the stockholders of the bank, and that the assent of three-fourths of the stockholders of the bank was not procured at any time, directly or indirectly, authorizing the increase of said stock, and that the purported increase of stock was, and is, fictitious, and absolutely void. The court finds that the defendant, E. L. Hardister, was an innocent purchaser of such stock for value, that he never participated in any stockholders' meeting, never received any dividends on said stock, and that as a matter of law the claim of estoppel will not lie because the said stock certificate represents an entirely fictitious and void issue of stock."

Judgment was rendered denying plaintiff recovery upon the alleged stockholders' liability, and for the defendant against the Bartlesville State Bank and the Bank Commissioner of Oklahoma for the purchase price paid by the defendant for the fictitious stock, from which the Bank Commissioner has appealed.

It is conceded by the plaintiff in error that the findings of fact are supported by the evidence, but it is contended that the defendant was estopped to deny liability by reason of having purchased the stock more than six months before the Bank Commissioner took over the bank and having permitted depositors to place their money on deposit in the bank relying on the records of the bank, which showed that the defendant was a stockholder in such bank. Section 4122, Comp. Stat. 1921, provides:

"The shareholders of every bank organized under this article shall be additionally liable for the amount of stock owned, and no more."

In Blackert v. Lankford, 74 Okla. 161, 176 Pac. 532, this court in the 6th paragraph of the syllabus held as follows:

"Where an action is instituted by the Bank Commissioner of the state to recover the double liability imposed by section 265, Rev. Laws 1910, as a general rule, all persons whose names are on the books of the bank, as the absolute owners of stock, are liable therefor, as parties dealing with the bank have a right to assume that the books of the bank show who are its stockholders, and as such stockholders they are bound for the liabilities of the bank in the manner provided by the statute, and if one knowingly permits his name to appear upon a stock book of the bank as a shareholder, he will be estopped, in favor of an action brought by the Bank Commissioner to collect the double liability, from denying liability."

In the body of the opinion the court said:

"The rule announced by text-writers and by the federal and the state courts seems to be that a person whose name rightfully appears on the books of a banking corporation as a shareholder must respond as such to all the statutory liabilities imposed upon shareholders, and this rule applies with full force to those holding stock as collateral security, unless that fact appears on the books of the corporation."

The plaintiff in error also relies on Farmers' State Guaranty Bank v. Cromwell, 70 Okla. 199, 173 Pac. 826, in which it was said:

"Where a prospective purchaser of stock in a bank goes to the cashier and president of the bank, and makes inquiry as to the condition of the bank, and as to the value of the stock, and is misled and deceived by the information given, and sustains loss on account thereof, in the absence of a showing of specific authority to make such representations, the bank cannot be held liable for the reason that the

officers were acting without the scope of their authority in giving the information relied upon."

Also Farmers' State Bank v. Empey (S. D.) 150 N. W. 936. the first paragraph of the syllabus being as follows:

"When one becomes stockholder in an insolvent bank through fraudulent representations, she must look to the seller of the stock for redress, and is estopped to deny, as against creditors, her statutory liability as shareholder if she was such .at the time the bank became indebted to the creditors."

To the same effect are the following cases cited in the brief of the plaintiff in error: Little v Owensboro Savings Bank (Ky.) 150 S. W. 334; Wallace v. Hood, 89 Fed. 11; Scott v. Lattimer, 89 Fed. 843; Scott v. Deweese, 181 U. S. 202, 49 L. Ed. 822.

The above cases referred to, however, are not decisive of the question involved here, because in none of these cases was the question of a fictitious increase of capital stock of the corporation involved. In each of those cases there was a valid issue of stock, but a fraudulent sale thereof was made to the defendant. In the instant case it is contended that the purported stock which was purchased by the defendant never existed, because the purported increase of capital stock was void. Sec. 39, art. 9, of the Constitution provides:

"No corporation shall issue stock except for money, labor done, or property actually received to the amount of the par value thereof, and all fictitious increase of stock or indebtedness shall be void and the Legislature shall prescribe the necessary regulations to prevent the issue of fictitious stock or indebtedness. The stock and bonded indebtedness of corporations shall not be increased except in pursuance of general law, nor without the consent of the persons holding the larger amount in value of the stock first obtained at a meeting to be held after 30 days' notice given in pursuance of law."

Section 5319, Comp. Stat. 1021, provides:

"A corporation whose capital is limited by its charter, either in amount or in number of shares cannot issue valid certificates in excess of the limit thus prescribed."

Section 4118, Comp. Stat. 1921, provides:

"The capital stock of any banking association doing business under the laws of this state may be increased or decreased at any time by resolution adopted by three-fourths of its stockholders, at any regular meeting or at a special meeting called for that purpose, of which all stockholders shall have due notice, in the manner provided by the by-laws of such banking association." etc

It is conceded that the purported increase of capital stock of the Bartlesville State Bank was in violation of the above constitutional and statutory provisions. In Pruitt v. Oklahoma Steam Baking Co., 39 Okla. 509, 135 Pac. 730, it was said:

"It is said in Cook on Stock and Stockholders, sec. 292, in stating the law on this subject: 'By overissued stock is to be understood stock issued in excess of the amount limited and prescribed by the act of incorporation. Certificates of stock issued in excess of the certificates that represent the full authorized stock of the corporation represent overissued stock. Such stock is spurious and wholly void. This is the settled law, and it prevails equally whether the overissue is the result of accident or mistake, or want of knowledge of the law, or is due to fraud and intentional wrongdoing. The animus or intent of the parties to the overissue is not material. Overissued stock, no matter how overissued, represents nothing, and is wholly and entirely valueless and void. So rigid and well established is this rule that not even a bona fide holder of such stock can give to it any validity or vitality.' Both by statute and at common law the issuance of the stock, delivered to plaintiff in exchange for his land, as we have seen, was void and not merely voidable at plaintiff's election. The corporation knowingly did that which it was without authority to do." (See, also, Lee v. Cameron, 67 Okla. 80, 169 Pac. 17; Bently v. Zelma Oil Co., 76 Okla. 116, 184 Pac. 131; Harn v. Smith, 85 Okla. 137, 204 Pac. 642.)

Fletcher, Cyclopedia of Corporations, sec. 3486, p. 5765, lays down this proposition:

"Stock issued without authority and in violation of law is void and confers no rights on the person to whom it is issued, and subjects him to no liablity."

We conclude, therefore, that the purported increase of stock in the Bartlesville State Bank was void, and it remains to be determined whether the defendant is estopped to deny liability as a stockholder of such bank by reason of having remained on the books of the corporation for a number of months as a stockholder in such bank, and in view of the contention that depositors relied upon him as a stockholder in making deposits in said bank. In Pruitt v. Oklahoma Steam Baking Co., supra, it was said:

"Where the issue of shares is illegal for the want of power of the company to issue them where the shares cannot legally exist, the person taking them cannot by estoppel, or otherwise, become a member in respect to them. Hence, being open to repudiation by the corporation itself or by dissenting shareholders, the person taking them has a

right to rescind the contract under which the stock was taken and be restored to his original position."

In American Tube Works v. Boston Machine Co. (Mass.) 29 N. E. 83, which is quoted in the above case by this court, it is said:

"The issue of special stock being invalid and being open to repudiation by the corporation itself, or by dissenting stockholders, the plaintiff had an election to rescind the contract under which the special stock was taken and to be restored to its original position. Allen v. Herrick 15 Gray, 274, 284. It was not bound by any estoppel. In all cases which have come under our observation where one has been held to be deemed a stockholder by estoppel, there has been a legal creation of the capital stock. Such was the case in Turnbull v. Payson, 95 U. S. 418. But where the issue of the shares is illegal, where no sufficient steps have been taken to authorize the creation of the capital stock, where a person has acted and been treated as a stockholder in respect of shares which the company had no power to issue, and where the shares cannot legally exist, the person taking them cannot, by estoppel or otherwise become a member in respect to them."

In Lee v. Cameron, 67 Okla. 80, 169 Pac. 17, it was held:

"The status of such stock is similar to that of an overissue, which has frequently and generally been held void in the hands of bona fide purchasers for value. This is based on the ground that an overissue of stock is entirely beyond the power of a corporation, such overissue cannot be validated by any estoppel operating against the corporation. The same rule is also applied to stock in the hands of one who purchased it in good faith and for a valuable consideration from the party to whom it was illegally issued by the corporation, for the reason that such stock cannot legally exist, and the person taking it cannot, by estoppel or otherwise, become a stockholder in the corporation that permitted the stock to be issued."

In Fletcher, Cyclopedia of Corporations, sec. 3488, p. 5774, it is stated:

"Where there is an inherent lack of power in the corporation to issue the stock, neither the corporation nor the person to whom the stock is issued is estopped to question its validity, since an estoppel cannot operate to create stock which, under the law, cannot have existence"

—and:

"No estoppel can properly arise in any case where the parties' direct and affirmative act could not have made the transaction valid. Even under such circumstances, however, the corporation may be liable in damages to a bona fide purchaser or pledgee of illegal stock."

In the instant case no act of the defendant could render the purported issue of stock valid and give life to the worthless paper, and the defendant cannot be estopped from denying his liability as a stockholder of such corporation by reason of appearing on the books of the corporation as the owner of such worthless stock.

No argument is made nor authorities presented in the brief of the plaintiff in error relative to the judgment rendered in favor of the defendant for the purchase price of the stock, and we therefore will not consider that question.

The judgment of the trial court is affirmed.

JOHNSON, C. J., and NICHOLSON, BRANSON, and WARREN, JJ., concur.