**STATE ex rel. WALCOTT, Bank Com'r, v. ZOLL.**

No. 15046— Opinion Filed May 12, 1925.

Rehearing Denied Oct. 27, 1925.

(Syllabus.)

1. **Banks and Banking—Double Liability of Stockholders in Failed Banks —Owners of Fictitious Stock.**

Where an action is instituted by the Bank Commissioner of the state to recover the double liability imposed by section 4122, Comp. Stat. 1921, as a general rule. all persons whose names are on the books of the bank, as the absolute owners of the stock, are liable as stockholders, and if one knowingly permits his name to appear upon the stock book of the bank as a shareholder, he will be estopped from denying liability, in an action brought to collect the double liability. This general rule does not apply, however, when the stock appearing in the name of the defendant is a part of a fictitious and invalid increase of the capital stock, which

has been issued in violation of the provisions of section 39, art. 9 of the Constitution and sections 4118 and 5319, Comp. St. 1921.

2. **Same—Status of Overissued Stock.**

Certificates of stock issued in excess of the certificates representing the full authorized stock of the corporation constitutes overissued stock and is spurious and void, and standing in the name of a person on the books of the corporation it represents nothing, confers no rights on him and subjects him to no liability. Such person cannot, by estoppel or otherwise, become a stockholder in respect to them and cannot, by estoppel, be subjected to the stockholders' liability imposed by section 4122, Comp. St. 1921.

3. **Same—Recovery of Price by Holder of Fraudulent Stock—Priority of Depositors' Rights Under Guaranty Fund Law.**

It was the purpose and intent of the law creating the Guaranty Fund for the protection of depositors in defunct state banks to render adequate protection to the depositors in such banks, and when a state bank became insolvent prior to the repeal of the Guaranty Fund Law the unsecured deposits must first be paid to the depositors before general creditors can participate in a distribution of the assets of said bank; and, where fraudulent stock has been issued to persons whose names appear upon the records of the bank as stockholders, such stockholders may recover the amount paid from the assets of such insolvent bank only after the unsecured depositors have been reimbursed.

Error from District Court, Washington County; H. C. Farrell, Judge.

Action by the State of Oklahoma ex rel. Roy Walcott, as State Bank Commissioner, against C. A. Zoll. Judgment for defendant, and plaintiff brings error. Modified and affirmed.

J. T. McIntosh, M. W. McKenzie, and Norman Barker, for plaintiff in error.

Rowland & Talbott, for defendant in error.

Ames, Lowe, Richardson & Cochran, amici curiae.

PHELPS, J. This is a companion case to No. 15045, State ex rel. Walcott v. Hardister, opinion filed April 29, 1924, and reported at 108 Okla. 64, 237 Pac. 75, and as the facts in this case are identical with the facts in that case, reference is hereby made to that case for a statement thereof. Defendant in error had purchased certain stock in the Bartlesville State Bank, paying cash therefor, the bank failed and when suit was brought by the state on the relation of the Bank Commissioner to recover the

so-called double liability from defendant in error, as a stockholder of the bank, he filed his answer and cross-petition praying for a return of the money he paid for the spurious stock. The court rendered judgment in his favor for $4,375 and interest, and decreed the same to be an approved claim against said bank on a parity with the depositors and other creditors of said bank. The last paragraph of the opinion of the court in State v. Hardister (supra) reads as follows:

"No argument is made, nor authorities presented, in the brief of the plaintiff in error relative to the judgment rendered in favor of the defendant for the purchase price of the stock, and we, therefore, will not consider that question."

Since the rendition of that opinion, however, counsel for plaintiff in error have filed their briefs and arguments in this case in which the claim is made that, although defendant may be entitled to be relieved from the burden of the so-called double liability because of the spurious nature and the manner of the issuance of the stock he held, and although he may be entitled to judgment against the bank for the return of the purchase price of the stock, yet he should not be allowed to participate in the distribution of the assets of the defunct bank on a parity with the unsecured depositors, and that question alone will be here considered, and the opinion in the case of State v. Hardister (supra) adopted as the opinion in this case with the modification or extension disposing of defendant's rights as a creditor of said bank because of the amount he paid for the spurious stock in question.

Section 1 of art. 14 of the Constitution of Oklahoma provides:

"That general laws shall be enacted by the Legislature providing for a creation of a Banking Department, to be under the control of a Bank Commissioner, who shall be appointed by the Governor for a term of four years, by and with the consent of the Senate, with sufficient power and authority to regulate and control all state banks, loan, trust, and guaranty companies, **under laws which shall provide for the protection of depositors and individual stockholders.**"

It will be observed that it was the manifest intention of the framers of the Constitution to provide protection for depositors in state banks. In order that this section of the Constitution should be vitalized the Legislature, at the first regular session after statehood, enacted laws in a measure vitalizing the same with respect to banks and trust companies, including a law providing for the protection of depositors. A guaranty fund was created by levying an assessment against the capital stock of every bank and trust company organized in the state, and provided for emergency assessments, but fixed the limit of such assessments for each given year.

By section 4162, Comp. St. 1921, it is provided:

"Such fund so created shall be known as the Depositors' Guaranty Fund of the State of Oklahoma, and shall be used solely for the purpose of liquidating deposits of failed banks and retiring warrants provided for in this act."

By subdivision E, sec. 4162, Comp. St. 1921, it is provided:

"If at any time the Depositors' Guaranty Fund on hand shall be insufficient to pay the depositors of failed banks, or other indebtedness properly chargeable against the same, the Banking Board shall have authority to issue certificates of indebtedness," etc.

By subdivision F of the same section, it is provided that the Banking Board is authorized to issue such warrants, bearing interest, and these warrants become a charge and a lien against the Depositors' Guaranty Fund when collected, as well as a first lien against the capital stock, surplus, and undivided profits of each state bank of Oklahoma, and section G provides "for the liquidation and retirement of these warrants."

By section 4163, Comp. St. 1921, the method of levying an emergency assessment is fully determined and retirement of warrants by the State Banking Board is provided for.

By section 4165, Comp. St. 1921, the commissioner is directed to wind up the affairs of the banks upon determining that insolvency exists in any state bank or trust company.

The whole policy of the guaranty law seems to have been directed towards the accomplishment of one end, to wit, proper and adequate protection for the depositor. We think this conclusion is fully justified in the following cases: Noble State Bank v. Haskell, 22 Okla. 48, 97 Pac. 590; State ex rel. Short v. Norman, 86 Okla. 36, 206 Pac. 522; also in the case of State ex rel. Short v. Johnson, 90 Okla. 21, 215 Pac. 945.

In order that this protection authorized by the Constitution and priority created by the legislative enactment creating a Depositors' Guaranty Fund would be effective, the Legislature provided in section 4166 Comp. St. 1921, which was originally section 303, R. L. 1910, as follows:

"In the event that the Bank Commissioner shall take possession of any bank or trust

company, which is subject to the provisions of this chapter, the **depositors of said bank or trust company shall be paid in full,** and when the cash available or that can be made immediately available of said bank or trust company is not sufficient to discharge its obligation to depositors, the Banking Board shall draw from the Depositors' Guaranty Fund and from additional assessments, if required, as provided in section 300, the amount necessary to make up the deficiency; and the state shall have for the benefit of the Depositors' Guaranty Fund a first lien upon the assets of said bank or trust company, and all liabilities against the stockholders, officers and directors of said bank or trust company and against all other persons, corporations or firms. Such liabilities may be enforced by the state for the benefit of the Depositors' Guaranty Fund."

This section of the statute determines that the depositors of an insolvent bank shall be paid in full, and further provides that if the cash available, and the cash that can be made available, is not sufficient to pay the depositors in full, then the Banking Board should draw monies out of the Guaranty Fund to pay the balance to the depositors in full, and if there were no funds in the Guaranty Fund the board was authorized to issue its warrants against such fund. When this indebtedness was incurred, either by advancing the money or by issuing warrants, the Legislature determined that the state should have a first lien against the assets of such insolvent bank until the Guaranty Fund has been fully reimbursed on account of its liability growing out of the failure of any such bank. In addition to that, the state was given a first lien against all other persons, corporations, and firms indebted to the bank. This section of the statute has been frequently interpreted by this court.

In the case of Columbia Bank & Trust Co. v. United States Fidelity & Guaranty Co., 33 Okla. 536, 126 Pac. 556, the Bank Commissioner made application to the district court of Oklahoma county for an order of sale to sell certain assets of the Columbia Bank & Trust Company. The surety company filed its petition in intervention; judgment was rendered for the intervener, and the commissioner appealed. In the petition in intervention the surety company urged that its execution of the bond for the bank to the state of Oklahoma in the sum of $50,000 was to protect the state of Oklahoma against loss by reason of a deposit in said bank of public funds coming into the possession of the Commissioners of the Land Office, and asked the Court for an order allowing the surety company, by reason of payment to the state for the benefit of the Commissioners of the Land Office the amount of funds on deposit in said bank at the time of its failure, the right to participate pro rata in the distribution of the assets of the bank. In passing on this section of the statute with regard to the payment in full to depositors of an insolvent bank, this court said:

"That the money deposited in the bank by the Commissioners of the Land Office was a deposit in a broad sense is probably true. But it is clear to our minds that the Commissioners of the Land Office are not such depositors, and the funds which the law permits them to deposit in pursuance of their official duties are not such deposits as fall within the purview of section 323, supra (sec. 4166, Comp. St. 1921). This was a special statutory deposit, with strict legislative bounds within which the depositor is required to act."

And in the opinion, at page 547, the court says:

"The purpose of this proceeding is to compel the Bank Commissioner, acting for the principal, to pay the debt out of the Depositors' Fund. If this is done, the surety would be discharged and released from liability."

The court lays down the rule in the syllabus:

"* * * The protection extended to general depositors by virtue of the police power of the state, by section 323, O. L. 1909, which provides for the Depositors' Guaranty Fund, does not apply to the deposits of the permanent school fund."

Had the surety company been paid in the Columbia Bank & Trust Company Case out of the Guaranty Fund for the loss to the Commissioners of the Land Office, there would have been no just reason or wisdom in a legislative enactment requiring the land office to take such security for a deposit of such funds in a state bank when the guaranty law was functioning. While the guaranty law was functioning it was clearly the intention of the framers of that law to provide: First, when a state bank fails the depositors shall be paid in full. Second, upon such failure, if there is enough cash available, or that can be made available, which means if there are assets in the bank that can be sold for enough cash, then the depositors shall be paid in full out of the cash that is available, or can be made available. Third, upon such failure the depositors shall be paid in full, and if there is not enough cash, or assets that can be converted into cash, with which to pay the unsecured depositors, then after using the available cash the Guaranty Fund was required to make up the difference or deficiency, and thereby pay the depositors in full. In other words, we

reach the conclusion that it was a well-settled policy of the banking law of this state prior to the repeal of the law creating the Guaranty Fund to first pay the unsecured deposits in full to the depositors, and after such payment then to pay the general creditors. Lankford, State Bank Commissioner, v. Oklahoma Engraving & Printing Co., 35 Okla. 404, 130 Pac. 278; Columbia Bank & Trust Co. v. U. S. Fidelity & Guaranty Co. (supra). And in the recent case of White et al. v. State, 94 Okla. 7, 220 Pac. 624, the court held:

"Under the statutes of Oklahoma relating to the Depositors' Guaranty Fund, the Bank Commissioner took possession of a failed bank for the purpose of liquidating its assets and winding up its affairs. Out of such assets he caused all depositors of such failed bank to be paid in full. Held, that such Bank Commissioner had authority, and it was his duty, in winding up the affairs of such failed bank, to liquidate the remaining assets for the purpose of paying other creditors of such failed bank."

Therefore, we conclude that the stock issued to the defendant in error was fictitious and void and that he is not estopped from denying liability thereunder, and that he is entitled to recover from the bank the amount of the purchase price of said stock, with interest thereon. But we further conclude that the unsecured deposits must first be paid in full from the assets of the defunct bank, and that after payment of unsecured deposits in full the defendant in error shall be placed on an equal basis with other creditors of the bank. It may be argued that the Guaranty Law was not functioning at the time the Bank Commissioner took charge of the Bartlesville State Bank, but we call attention to the fact that at the time the bank became insolvent the Guaranty Law was in full force and effect, not having been repealed at that time, and all the provisions of the law theretofore applicable were in full force and effect, and we must dispose of the case in compliance with the same rules of law that would have been in effect if the Guaranty Fund had not been depleted.

The judgment of the district court of Washington county is therefore modified in the following particulars: That the judgment of defendant against the bank on his cross-petition is placed on a parity with the other unsecured creditors, to be inferior, subject to, and paid only after the claims of the depositors for their unsecured deposits are paid in full, and with this modification the judgment of the district court of Washington county is affirmed.

NICHOLSIN, C. J., and HARRISON, LESTER, MASON, HUNT, CLARK, and RILEY, JJ., concur. BRANSON, V. C. J., concurs in conclusion.

Note.—See under (1) 7 C. J. p. 504 (1926 Anno). (2) 14 C. J. pp. 403, 404. (3) 7 C. J. pp. 484, 486.