**GARNETT v. STATE ex rel. BANK COMMISSIONER.**

No. 22459. Opinion Filed Dec. 6. 1932.

Rehearing Denied Jan. 3, 1933.

Application for Leave to File Second Petition for Rehearing Denied Feb. 28, 1933.

Robinson & Oden and Chas. H. Garnett, for plaintiffs in error.

M. B. Cope, W. C. Austin, Robert B. Harbison, and L. A. Pelley, for defendants in error.

McNEILL, J. The state, on relation of the Bank Commissioner, filed a separate suit against each of the defendants, E. L. Garnett, H. H. Harris, L. H. McConnell, J. A. Clarkson, and A. Kahle, respectively, in the district court of Jackson county, to enforce the statutory liability imposed by section 4122, C. O. S. 1921, by virtue of said defendants appearing on the records of the Citizens State Bank of Altus as stockholders of said bank. For the purpose of trial, the cases were consolidated and separate judgments rendered. In this court the cases have been consolidated under No. 22459.

It was alleged by plaintiff that said defendants were the owners of certain shares of capital stock of said bank at the time said bank was adjudged insolvent by the Bank Commissioner on February 3, 1930, as follows: Garnett, 50 shares; Harris, 50 shares; McConnell, 25 shares; Clarkson, 50 shares; and Kahle, 25 shares; that said defendants had refused payment of said stockholder's liability, and plaintiff prayed judgment against each defendant for a sum equal to the par value of the stock held by such defendant.

The defendants answered, admitting that they were the owners of certificates for purported shares of capital stock in said bank, but denied that said certificates represented valid stock in said bank, and alleged that each certificate of stock was at the time it was issued and ever since had been and still was fictitious and void. Said defendants further alleged that said bank increased its capital stock from $25,000 to $50,000, and issued September 11, 1929, certificates for purported stock in said bank to said defendants; that said stock had been issued pursuant to an illegal and invalid meeting of some of the stockholders, held on August 13, 1929.

It appears from the record that the defendants paid for their stock as follows: The defendant Garnett gave his unsecured promissory note in writing for $5,000; that the defendant Harris gave $3,000 cash and a promissory note for $2,000, signed by himself and father on a property statement; that the defendant McConnell gave his promissory note with security for $2,500; that the defendant Clarkson paid $5,000 cash; and that the defendant Kahle gave $1,000 in cash and his promissory note for $1,500, which note he afterwards paid.

Said defendants further alleged that said purported stockholders' meeting on August 13, 1929, at which said purported increase was voted, was not a regular annual meeting of the stockholders of said bank; that no stockholders' meeting was ordered called by its board of directors, nor by three-fourths of its stockholders in writing; that no oral or written notice of said meeting was given to the stockholders of said bank 30 days in advance, nor was notice waived by any stockholder; that only a part of its stockholders was present at said meeting; that no written consent of said meeting was entered on the records of said bank and signed by all of the stockholders; that said meeting was illegal and void, being in violation of section 39, art. 9, of the Constitution of the state of Oklahoma, and sections 4118 and 5348, C. O. S. 1921. Defendants further alleged that a purported certificate of increase of capital stock was filed with the Bank Commissioner, but that the matters and things set out in said certificate were false and fraudulent, and were made for the purpose of deceiving the Bank Commissioner, and to obtain his approval of the purported increase in the capital stock of said bank; that the amount of said capital stock constituting said increase was never paid in cash to said bank, and that the purported approval of said increase in said stock by the Bank Commissioner was wholly unauthorized and void.

Defendants further alleged that they were induced to make purchase of said shares of said void stock by false and fraudulent statements and representations by the officers of

said bank, to the effect that said stock was part of the valid increase of the capital stock of said bank; that said bank was solvent and was in a good and sound financial condition, when in truth and in fact said bank was then insolvent.

The defendants Harris, Clarkson, and Kahle prayed judgment against the plaintiff as creditors of said bank for the amount which each had paid in cash for his stock. The plaintiff replied by general denial, and further alleged that the meeting on August 13, 1929, was a duly called and held meeting of the stockholders of said bank; that all the stockholders were notified of said meeting and were present at the time, or ratified and confirmed the action of those present in increasing the capital stock of said bank from $25,000 to $50,000. Plaintiff further alleged in said reply that the defendants upon receiving their stock and becoming stockholders in said bank participated in the management of its affairs as stockholders and ratified the action of the old stockholders in increasing said stock, and that they are estopped to question as against the creditors of said bank the validity of said increase of capital stock; that the allegations of fraud and false representations made to defendants to purchase said stock would not constitute a defense to the claim of the depositors and creditors of said bank.

The trial court at the conclusion of the evidence made findings of fact and conclusions of law, finding that, prior to August 13, 1929, it had been talked and discussed among the stockholders of the advisability of increasing the capital stock of said bank from $25,000 to $50,000; that there was no general written or published notice given of said meeting, but that the stockholders present met in pursuance of the personal telephone calls by the president, and that by virtue thereof more than three-fourths of the then stockholders of said bank voted to increase said capital stock from $25,000 to $50,000; that there was no objection oral or written by any stockholder to the increase of the stock of said bank; and that no notice was given as contemplated by section 39, art. 9, of the Constitution of this state, or by the provisions of sections 4118 and 5348, C. O. S. 1921.

The court further found that the defendant Garnett paid no cash for his stock at the time said stock was issued; that the same was handled through a promissory note, which did not appear as an asset of

said bank until December 9, 1929. The court also made further findings in reference to the stock substantially as pleaded by the defendants in their answers. The court further found the defendant Garnett, after he became a stockholder, was elected as a director in said bank, and was actively engaged as such in the management of the affairs of said bank; that the defendant Harris was employed as an officer and engaged as teller or assistant cashier in said bank after the purchase of his stock; that the defendants Clarkson, McConnell, and Kahle were not actively engaged in the conduct and management of said bank. The court concluded as a matter of law that the defendants Garnett and Harris were liable to the plaintiff for the amount of their stock in the sum of $5,000 each, and that the defendants Kahle, Clarkson, and McConnell were not liable.

Motion for new trial was filed by the plaintiff in the McConnell, Clarkson, and Kahle cases, and by the defendants Garnett, Harris, Clarkson, and Kahle, in their cases.

It is the theory of the defendants that the attempted increase of the capital stock of the Citizens State Bank of Altus was illegal; that said stock was void because the provisions of the Constitution and statutes of Oklahoma, prescribing the requirements and procedure for increasing the capital stock of said bank, were not complied with; that the provisions of the Constitution and statutes in regard to the calling and the notice of a special meeting of the stockholders for the purpose of increasing the capital stock of a bank are mandatory, and that, unless complied with, a meeting of the stockholders is not legally assembled, and is without authority in law to authorize an increase of capital stock; and that these requirements are jurisdictional and cannot be dispensed with.

Counsel for defendants also contend that the purported stock issued to the defendants Garnett, Harris, Clarkson, and Kahle was void, because it was not paid for in money, property, or service in an amount equal to its par value as required by the Constitution and statutes of the state of Oklahoma; also, that the defendants Garnett and Harris could not be held for stockholders' double liability on the ground of estoppel when the purported stock issued to them was fictitious and void; also by reason of the increased stock being void, that the defendants Harris Clarkson, and Kahle were entitled to recover judgment in their favor

on their cross-petitions for the amount of cash which they had paid for their stock.

This case involves the construction of section 39, art. 9, of the Constitution, sections 4118 and 5348, C. O. S. 1921. Section 39, supra, is as follows:

"No corporation shall issue stock except for money, labor done, or property actually received to the amount of the par value thereof, and all fictitious increase of stock or indebtedness shall be void, and the Legislature shall prescribe the necessary regulations to prevent the issue of fictitious stock or indebtedness. The stock and bonded indebtedness of corporations shall not be increased except in pursuance of general law, or without the consent of the persons holding the larger amount in value of the stock first obtained at a meeting to be held after 30 days' notice given in pursuance of law."

It is to be observed that this provision of the Constitution is not self-executing. Said section 4118 deals with banking corporations, and, in part, provides:

"The capital stock of any banking association doing business under the laws of this state may be increased or decreased at any time by resolution adopted by three-fourths of its stockholders, at any regular meeting or at a special meeting called for that purpose, of which all stockholders shall have due notice, in the manner provided by the by-laws of such banking association. A certificate must be filed with the Bank Commissioner by the chairman and secretary of the meeting, and by a majority of all the directors, showing the compliance with the provisions of this section, the amount to which the capital stock has been increased or decreased, the amount of stock represented at the meeting, and the vote upon the question to increase or decrease the capital stock. No such changes in the capital stock of any such association shall be valid or binding until the same shall have been approved by the Bank Commissioner. No increase of the capital stock shall be approved until the amount thereof shall have been paid in cash."

Section 5348, C. O. S. 1921, also deals with the change in the capital stock of corporations, and provides, in part, as follows:

"Fifth. Before an increase of the capital stock of a corporation authorized as herein provided shall be effective, a certificate must be signed by the chairman and secretary of the meeting and a majority of the directors, showing compliance with the requirements of this section, the amount to which the capital stock has been increased or diminished, the amount of stock represented at the meeting, and the vote by which the object was accomplished.

"Sixth. The certificate must be filed in the office of the Secretary of State, there to be recorded in the book of corporations, and thereupon the capital stock shall be so increased or diminished."

The court made findings of fact in part as follows:

"* * * That prior to August 13, 1929, it had been talked and discussed among the then stockholders that it would be advisable to increase the capital stock of said bank from the sum of $25,000 to $50,000; and that pursuant to said discussion that there was a meeting held of certain of the stockholders, the original stockholders, in said bank, on August 13, in the banking house of said bank in the city of Altus.

"The court finds that there was no general written or published notice given of said meeting, but that the stockholders present met in pursuance of personal, and telephone calls by the president, B. M. Woolridge, and others, and assembled in said banking institution on said date and by virtue of more than three-fourths of the stockholders, voted to increase the capital stock from $25,000 to $50,000. That there was no objection, oral or written, by any of the stockholders, to the increase of the stock of said bank; that all of the stockholders then present, either in person or by proxy, joined in the voting for the increase of the capital stock from $25,000 to $50,000."

The court also found that no notice was given under section 39 of article 9 of the Constitution, or in accordance with section 4118 or section 5348, supra, and concludes, in part, as follows:

"It is, therefore, the opinion and judgment of the court that the holders of the shares of stock in the said Citizens State Bank, on and prior to August 13, 1929, at said meeting and by the vote of the said stockholders, voted the increase of the capital stock of said bank from $25,000 to $50,000. That all of said stockholders owning stock in said bank either participated in said vote or thereafter ratified and adopted the same; that the said increase was thereby effected and was duly certified to and approved by the Bank Commissioner of the state of Oklahoma, and was also duly certified to the Secretary of State and certificate of said increase duly issued by him and delivered to and accepted by said bank and the stockholders thereof, including the defendants herein."

It is to be observed that the court concludes from its findings that said increase was thereby effective and was certified to

and approved by the Bank Commissioner of the state of Oklahoma. We are of the opinion that these findings are amply supported by the record. The bank in question had authority under the Constitution and statutes of the state of Oklahoma to increase its capital stock.

In considering the contention of the defendants that the stock issued in the instant case was void by reason of there being no compliance with the aforesaid section 39, art. 9, of the Constitution and the aforesaid sections of the statute, we are faced with the proposition as to whether the defendants as new stockholders can urge the irregularity and noncompliance with the aforesaid section of the Constitution and said sections of the statutes as against the creditors of an insolvent bank. We are not favorably impressed with such contention. If there was no consent on the part of the old stockholders relative to the increase of the stock, a different question would be presented. The trial court found that such consent as required by law had been obtained. The evidence supports this finding. After the Bank Commissioner took charge of the insolvent institution, the rights of the depositors in that institution as creditors of the bank intervened. This constitutional or statutory provision relating to notice to the stockholders could be waived by them upon their consent, acquiescence, and approval, as shown by the record herein. The Supreme Court of Missouri, in the case of Riesterer v. Horton Land & Lumber Co., 61 S. W. 239, in construing a constitutional and statutory provision very similar to the aforesaid section of our Constitution and sections of the statutes, supra, said:

"The Constitutions and laws of many of our sister states contain provisions similar to the provisions of our Constitution and statutes requiring a public notice to be given a specified number of days before the meeting of the stockholders is held to increase the capital stock or bonded indebtedness, and in every instance in which the question has come before the courts it has been held that the notice required is for the benefit of the stockholders; that the public has no interest in the matter; and that, if all the stockholders get together, even without any previous notice, and unanimously or the requisite majority of the whole number so assembled vote to increase the stock or bonded indebtedness, the act is legal, for those for whose benefit a protection is promised may, if sui juris, waive the benefit of the protection, and bind themselves by contract. For these reasons mortgages executed to secure a bonded indebtedness, pursuant to the order of the stockholders when they were all assembled in a meeting, although the meeting was not called by giving the public notice required by the Constitution, have been held to be valid. Campbell v. Mining Co. (C. C. Mont.) 51 Fed. 1; Ice Co. v. Meader (C. C. A. Ala.) 72 Fed. 115; Trust Co. v. Condon (C. C. A. Tenn.) 67 Fed. 84; Wood v. Waterworks Co. (C. C. Pa.) 44 Fed. 146; Nelson v. Hubbard, 96 Ala. 238, 11 South. 428, 17 L. R. A. 375. In other instances the provision for notice was by statute, but not in the Constitution, and the same rule was adopted. Beecher v. Mill Co., 45 Mich. 103, 7 N. W. 695; Thomas v. Railroad Co., 104 Ill. 462; Farmers' Loan & Trust Co. v. Toledo, A. A. & N. M. R. Co. (C. C.) 67 Fed. 49; Commissioners v. Aspinwall, 62 U. S. 539, 16 L. Ed. 208. The same doctrine is maintained by the standard textwriters. 5 Thomp. Corp., secs. 6060, 6069; 2 Cook, Corp. 599; 2 Mor., Priv. Corp. sec. 675."

See, also, Benbow v. Cook (N. C.) 20 S. E. 453; Nelson v. Hubbard, 96 Ala. 238, 11 So. 428; Georgia Granite R. Co. v. Miller (Ga.) 87 S. E. 897; State ex rel. v. Cook (Mo.) 77 S. W. 559; section 3469, Fletcher on Corporations, vol. 5.

In this same connection, counsel for defendants also urge that there was no compliance with the Constitution, section 39, art. 9, in reference to the issuance of stock, except for money, labor done, or property actually received to the amount of the par value thereof; that section 4118 provides that no increase of the capital stock shall be approved by the Bank Commissioner until the amount thereof shall have been paid in cash; and that the approval by the Bank Commissioner was unauthorized and void because the same was based on false and fraudulent certificates. These questions are not available to one who has held himself out as a stockholder as against the rights of intervening creditors in the case of an insolvent bank. The Supreme Court of the United States, in considering an action to enforce the liability of a stockholder in a national bank, wherein the defense was that all the increase had not been paid as required by the National Banking Act, in the case of Scott v. Deweese, 181 U. S. 202, speaking through Mr. Justice Harlin, said:

"The defendant lays great stress on the words in section 5142, 'no increase of capital shall be valid, until the whole amount of such increase is paid in,' and until the Comptroller shall certify that the amount of the proposed increase 'has been duly paid in as part of the capital of such association.' But does it follow that one who claimed to

be a shareholder in respect of an increase of the bank's capital, and who was recognized as such by. the bank, particularly if he held. a formal certificate stating that he was a shareholder, can escape liability, under section 5151, by simply proving—after the bank has suspended and has been placed into the hands of a receiver—that. the whole amount of the proposed increase was not, in fact, 'paid in,' as required by section 5142, although the contrary was certified by the Comptroller upon the bank's report to that officer? We think not. * * *

"The present suit is primarily in the interest of creditors of the bank. It is based upon a statute designed not only for their protection, but to give confidence to all dealing with national banks in respect of their contracts, debts, and engagements, as well as to stockholders generally. If the subscriber became a shareholder in consequence of frauds practiced upon him by others, whether they be officers of the bank or officers of the government, he must look to them for such redress as the law authorizes, and is estopped as against creditors, to deny that he is a shareholder, within the meaning of section 5151, if at the time the rights of creditors accrued he occupied and was accorded the rights appertaining to that position.".

This rule of law is pertinent. to the facts in this case. If these provisions aforesaid are not complied with, and the same are disregarded, such questions may be properly controlled by the Bank Commissioner, who has chanrge of all state banking institutions in this state. He may require obedience to this law. The questioning of this irregularity is for the state, and cannot be called in question by one whose name appears as a stockholder on the record of the corporation as against the depositors of failed bank. See section 288, Cook on Corporations (8th Ed.). If the corporation has no authority to issue increased stock, such issuance is void, but if such increased issuance of stock is authorized by the law or charter provisions, and the same is irregularly issued, such stock is not void, but voidable.

"There is a clear distinction between over-issued stock and an irregular increase of stock. The former is where an attempted. increase of stock is made, although no increase is authorized by the charter or by statute. The latter occurs when there is a statutory or charter provision authorizing an increase of the stock, but the formalities prescribed for making that increase have not been strictly complied with. Over-issued stock is void while an irregular increase of stock is merely voidable." Cook on Corporations, sec. 292, vol. 1, p. 977.

See, also, Fletcher's Cyclopedia Corp., sec. 3486. Cook, supra, sec. 288.

All persons are presumed to know the law, and the validity of its issue of stock was at all times open to each of the defendants herein. A noncompliance with this requirement of the law cannot constitute a bar to the institution of a suit by the Bank Commissioner for the recovery of a credit in the way of additional stockholders' liability, which is specially created as a security for the benefit of the depositors of a failed banking institution. See Cunningham v. Commissioner of Banks (Mass.) 144 N. E. 447; Commissioner of Banks v. Cosmopolitan Trust Co. (Mass.) 148 N. E. 609.

14 C. J. 496 announces the following rule:

"The capital stock of a corporation cannot legally be increased except to the extent, under the conditions and in the manner prescribed by the charter or statute, as the case may be, although mere irregularities in proceedings may be cured by conduct amounting to acquiescence, ratification or estoppel, and an increase will not necessarily be invalidated as between the corporation and the assenting stockholders by a failure to comply with requirements intended for the benefit of the public. The provisions of the charter or other governing statute touching an increase of the capital stock of a corporation must govern subsisting contractual requirements in the making of such increase."

Counsel for defendant urge that the case of State ex rel. Walcott v. Hardister, 108 Okla. 64, 237 P. 75, and the companion case of state ex rel. Walcott v. Zoll, 113 Okla. 208, 240 P. 1035, are controlling. However, an examination of those cases shows that they are distinguishable from the case at bar. In those cases there was no meeting of the stockholders authorizing the increase of the stock. In the case at bar there was a meeting of the stockholders authorizing the increased issuance of the stock. The stockholders never participated in any of meetings of the stockholders in the Hardister Case. In that case the court held that no notice was given to the stockholders for any meeting authorizing the increase of the stock, which is an entirely different situation from that which is presented by the instant record. The rule announced in that case ought not to be extended further, so as to permit a person who appears as a stockholder on the records of a bank, with knowledge of such facts, holding certificates of stock therein, and knowing that his name is being used as such by the bank and recognized by the depositors of that bank as a stockholder, to

deny the stockholders' liability imposed by law, after the failure of such institution, to the prejudice of creditors of said bank. In the case at bar, the defendants and each of them received their certificate of stock. Three eventually paid cash; the other two gave their notes for payment of the same. They intended to subscribe for the stock in that bank, and so far as this record shows, they intended to pay their obligations represented by the notes. There is nothing to indicate in this record that these notes did not represent value. The records of the institution were at all times open to them as stockholders. They apparently and voluntarily sustained this relationship and held themselves out to the general public as ostensible stockholders. They undoubtedly hoped to receive dividends from the institution which had issued stock to them. The Supreme Court of Massachusetts, in the case of Commissioner of Banks v. Cosmopolitan Trust Co., 148 N. E. 609, 41 A. L. R. 658, announced a wholesome rule, when it said:

"The true rule is, when action is brought in behalf of creditors by the representative of an insolvent financial corporation, like a bank or trust company organized and conducted for the purpose of soliciting and receiving deposits from the public, to enforce the statutory liability of its stockholders, that those who have subscribed for an increase of stock within the power of the corporation to make, who have received and accepted certificates of stock issued to them, and whose names thus have been entered on the books of the corporation as stockholders, who have collected and kept dividends on such stock, and who have acted as stockholders directly or indirectly in the management of the corporation, will not be heard to defeat such an action on the ground that the stock was increased in an irregular or unlawful manner."

We commend that rule. There ought to be no relaxation of law as applied to banking institutions in that regard. To do otherwise would sanction the committing of a fraud upon the banking laws of the state. See Farmers & M. Bank v. Jenks, 7 Met. 592. Public confidence in banking institutions ought to be strengthened and not shaken and disturbed by permitting stockholders to escape a contractual liability imposed by law, and established for the benefit and safety of creditors who have deposited their earnings in the institution in which they reposed confidence and integrity. If the defendants have just cause for grievance by reason of any deceit or fraud practiced upon them in inducing them to become stockholders in the instant institution, they should be remanded to those who were instrumental in practicing this deceit upon them. Scott v. Deweese, supra. This is not a proper defense against the creditors of a bank for the enforcement of a stockholder's double liability. Duke v. Johnson (Wash.) 211 P. 710. Had they proceeded to timely cancel their obligations and to have their names removed as directors of said institution prior to the Bank Commissioner taking charge of the insolvent institution, and before the rights of the creditors of said institution had intervened, a different question would be before us. When the bank failed, then the right of creditors intervened, and defendants do not stand in the same position as prior to the failure of the bank. Their rights to avoid this statutory liability should have been exercised before the rights of third parties, the creditors, intervened. Cunningham v. Commissioner of Banks (Mass.) 144 N. E. 447, supra. They permitted the advertisement of their names to the public as stockholders; participated in stockholders' meetings; signed their names as stockholders of said bank on December 20, 1929; authorized a stockholder to surrender all of their stock to a prospective purchaser of said bank; and each voted an assessment on himself. They, at least, were de facto stockholders in a banking institution which was operating under a reorganized plan, whereby it had attempted to have its stock increased from $25,000 to $50,000.

In the case of Sanger v. Upton, Assignee, 91 U. S. 56, p. 64, the United States Supreme Court said:

"Where there are defects in the organization of a corporation which might be fatal upon a writ of quo warranto, a stockholder who has participated in its acts as a corporation de facto is estopped to deny its rightful existence. Eaton v. Aspinwall, 19 N. Y. 119, Abbott v. Aspinwall, 26 Barb. (N. Y.) 202."

Without further discussion, we conclude that the acts and conduct of said defendants in the face of the record do not justify this court to permit them to escape, evade, or avoid the enforcement of their statutory liability as stockholders, commendable as their motives may have been which prompted them in this business venture. The judgment of the trial court is affirmed as to the defendants Garnett and Harris, in cases numbered 22459 and 22460, and reversed as to the defendants, McConnell, Clarkson and Kahle, in cases numbered 22461, 22462, and 22463, respectively.

202

CLARK, V. C. J., and RILEY, HEFNER, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. CULLISON, J., dissents. LESTER, C. J., absent.